## DALLAS RY. & TERMINAL CO. v. GARRISON.

### No. 1318—5879.

Commission of Appeals of Texas, Section B.

Jan. 6, 1932.

Worsham, Rollins, Burford, Ryburn & Hincks and Allen Charlton, all of Dallas, for plaintiff in error.

Alex Pope, of Dallas, and Bryan, Maxwell & Dardnne, of Waco, for defendant in error.

SHORT, P. J.

The Court of Civil Appeals [33 S.W.(2d) 295] has made the following brief and comprehensive statement of the nature and result of this suit: "This was a suit by appellant Harry Garrison against appellee Dallas Railway & Terminal Company. It was for damages for personal injury suffered by appellant's wife as the result of a collision at the intersection of Brandon street and Hampton road in the city of Dallas, between one of appellee's street cars and an automobile operated by appellant, in which his wife was riding. On special issues submitted to them, the jury found that appellee's employees operating the street car were not guilty of negligence in any of the respects charged against them, and that appellant was guilty of negligence in respects charged against him. On those findings judgment was rendered denying appellant a recovery of anything, and in appellee's favor for costs; whereupon appellant prosecuted this appeal."

Upon a consideration of the record, the Court of Civil Appeals reversed the judgment of the district court and remanded the case for a new trial. 33 S.W.(2d) 295.

The Supreme Court granted the application for a writ of error because there was a doubt whether the holding of the Court of Civil Appeals, construing the rule of misconduct of the jury, was correct.

This is a companion case to Dallas Railway & Terminal Company v. Garrison, 30 S.W.(2d) 1108, wherein the Court of Civil Appeals at Austin affirmed the judgment for $1,250 for personal injuries in favor of Gerald Garrison, the minor son of Harry Garrison, the husband whose wife was injured in this case under discussion, but the Supreme Court granted a writ of error in that case and the judgment of the Court of Civil Appeals has been reversed by an opinion written by Judge Leddy of this Section of the Commission of Appeals. 45 S.W.(2d) 183. However, the point upon which the last-mentioned case was decided is not involved in this case, and we only refer to it because the opinion of the Court of Civil Appeals and that of Judge Leddy discuss at some length the facts involved in the transaction, as reflected by the pleadings especially.

There are two legal questions presented by the application, one relating to alleged misconduct of the jury, and the other involving the construction of Rule 62 of the Supreme Court for the government of Courts of Civil Appeals.

In the motion for a new trial, the defendant in error alleged that the jury had been guilty of misconduct to the prejudice of the cause of action of his wife, who had received injuries in the collision, and to himself, whose automobile had been damaged. In support of this motion, three of the members of the jury were introduced, and the trial judge, after hearing their testimony, overruled the motion. The defendant in error asserts that the following portion of the testimony of the juror Hammon, upon which the Court of Civil Appeals relied in support of its judgment, reversing that of the district court, shows such misconduct within the meaning of that word, as used in article 2234, R. S. 1925, as entitled him to a new trial. "The first thing the jury did after they retired was to elect a foreman, Mr. Miller, and the next thing we did we took a ballot on how the jury stood in regard to rendering a verdict in favor of the defendant or the plaintiff. We had a discussion about how to put this question to the jury—that is, the foreman did, and we finally decided on just writing it on a piece of paper 'Garrison guilty' or 'Street Car Company guilty of negligence.' * * * All twelve of the jurors voted that Garrison was negligent. After having done that and after having arrived at a verdict we proceeded to answer the issues * · * * so as to secure that verdict to the company. * * * After we decided the plaintiff was guilty of negligence and the defendant was not, and we found the plaintiff's negligence caused it, we took up each question and found in accordance with what we already found."

The plaintiff in error, in his application for writ of error, asserts that this excerpt from the testimony of this juror does not fairly reflect what the juror said, asserting that this juror did not undertake to testify to any agreement to answer the questions so as to conform to the result of the ballot taken as to whether the defendant in error, or the plaintiff in error, was negligent, quoting in support of this contention the following testimony given by Hammon: "We had quite a bit of discussion on these issues and decided them in accordance with the evidence as we believed it." In further support of its contention, that the Court of Civil Appeals reached an incorrect conclusion, the plaintiff in error quotes from the testimony of the juror Stapler as follows: "We answered them (that is the issues) as we understood the evidence showed they should be answered, always taking the evidence into consideration. After we went out of the jury room we all heard the charge read. I heard the court read it; and I heard the Railway Company argue the case before we began a discussion and deliberation. I heard the evidence, and the plaintiff was contending the street car was negligent, and the defendant was con-

tending that the plaintiff was negligent. The court submitted those questions to us in a number of different forms. * * * Then we all decided to vote on it, if one was guilty or not guilty. When we voted on that, we voted on it according to the evidence only. I finally came to the conclusion on the last ballot with the other jurors that the plaintiff was the one who was guilty of negligence. When we took up the questions we answered them one by one, and we answered them according to what I believed from the evidence." And also the following from the testimony of the juror Peters: "The jury was unanimous in answering those issues that way; they were all agreed that we had answered the issues down to that part (the question on damages) as we understood it under the law and the evidence. We then took up the questions and read them and answered the questions as we came to them, starting with one and going on down, answering them according as we thought the evidence justified."

The court submitted to the jury 52 special issues, 44 of which were answered, the other 8 not requiring an answer under the instructions given.

The substance of these answers is to the effect that the motorman of the plaintiff in error kept a proper lookout for vehicles traveling on the street defendant in error was traveling as the street car approached the intersection of the streets where the collision occurred; that the motorman at the time and place sounded the gong and rang the bell immediately prior to entering the intersection of the streets at the time of the collision; that the street car was being operated at a speed of 12 or 15 miles an hour, and that this speed was nót negligence under the circumstances; that the wife of the defendant in error, who was riding in the automobile with him, was in a perilous position immediately prior to the collision; that the motorman discovered this perilous position immediately prior to the collision; that the motorman realized the perilous position of the wife immediately prior to the collision; that, after making said discovery, the motorman used all the means at his command to avoid the collision; that the wife of the defendant in error failed to warn her husband to lessen the speed of the automobile as he approached the intersection of the streets where the collision occurred; that the wife, in failing to warn her husband, did not use ordinary care; that such failure caused or contributed to cause the collision; that the wife failed to exercise ordinary care to listen for the approaching street car; that this failure caused or contributed to cause the collision; that the wife failed to exercise ordinary care to keep a lookout for the street car at the time and place in question; that this failure caused or contributed to cause the collision; that the de-

fendant in error was driving the automobile in excess of 20 miles per hour (there was an ordinance in the city of Dallas prohibiting the driving of automobiles on its streets in excess of 20 miles per hour); that the wife failed to warn her husband to reduce the speed of the automobile after entering the city of Dallas to a speed of 20 miles per hour; that in failing to give this warning wife did not exercise ordinary care for her own safety; that this failure caused or contributed to cause the collision; that the defendant in error failed to exercise ordinary care to keep a lookout for the street car at the time and place in question; that such failure caused or contributed to cause the collision; that defendant in error failed to exercise ordinary care in driving the automobile at the rate of speed he was driving at and just prior to the time of the collision: that this rate of speed caused or contributed to cause the collision; that the defendant in error failed to exercise ordinary care to listen for the approaching street car; that this failure caused or contributed to cause the collision; that defendant in error failed to exercise ordinary care in reducing the speed of the automobile as he approached the intersection of the streets; that this failure caused or contributed to cause the collision; that defendant in error failed to exercise ordinary care in entering the intersection of the streets prior to the collision; that this failure caused or contributed to cause the collision; that the defendant in error failed to keep to the right hand of the street as he approached the intersection of the streets; that this failure caused or contributed to cause the collision; that the defendant in error was driving in excess of 20 miles an hour immediately prior to the time he discovered the approach of the street car; that this speed caused or contributed to cause the collision; that the defendant in error, in approaching the intersection of the streets, failed to go slowly; that this failure caused or contributed to cause the collision; that the defendant in error failed to sound his horn or give any other signal on his automobile as he approached the intersection of the streets; that this failure caused or contributed to cause the collision; that the defendant in error failed to drive beyond the center of the intersection of the streets before turning to the left, and that this failure caused or contributed to cause the collision; that the defendant in error approached the intersection of the streets without having his automobile under control, and that the failure to have it under control caused or contributed to cause the collision; that the collision was not due to an accident; that no sum of money would compensate the wife of the defendant in error for the injuries she received; that there was no reasonable cost of repairs to the automobile, which was injured; that this automobile had

no market value prior to the collision, and that it had no market value after the collision.

It will be noted that the substance of the testimony of the juror Hammon is that, when the jury went out, the first thing they did was to reach a conclusion whether the defendant in error, Garrison, was guilty of negligence, or the street car company was guilty of negligence, and after having reached this conclusion the jury then proceeded to answer each one of the special issues, so as to secure a verdict for the company, which it proceeded to do. This testimony of the juror Hammon is not contradicted substantially by any other testimony. In fact, the testimony of the juror Stanfield is in harmony with that of the juror Hammon on this point, as far as it goes, but this juror does not say that after the jury had reached its conclusion, as to which one of the parties was negligent, it did in fact agree that the answers to the special issues should be made in harmony with the original conclusion. As to this latter portion of the juror Hammon's testimony, the testimony of the other jurors is merely silent. The trial judge heard this testimony, and concluded that there was no misconduct shown, and if there had been no testimony showing misconduct this conclusion of the trial court could not be disturbed by the Court of Civil Appeals, but such is not the situation here. There was testimony showing misconduct, and the Court of Civil Appeals, in the exercise of its authority to pass upon the sufficiency of testimony, reaches an opposite conclusion from that reached by the trial court, and the effect of the conclusion reached by the Court of Civil Appeals is that the testimony taken as a whole is not sufficient to negative the idea that misconduct existed. This the Court of Civil Appeals had the authority to do, and the Supreme Court has no authority to set aside that conclusion and determine that the trial judge was correct in his conclusion.

In discussing article 2189, R. S. 1925, Judge Sharp, speaking for Section A of the Commission of Appeals, in Simmonds v. St. Louis B. & M. Ry. Co., 29 S.W.(2d) 989, 990, among other things said: "The courts of this state have held, and it now seems to be the settled rule, that the purpose of article 2189 is to prevent a jury from first determining that they will give a party to the suit a verdict, and to then frame their answers so as to carry out their agreement. That the principal object in submitting a case to the jury upon special issues is that they should be removed from any bias or prejudice in favor of or against the parties by reason of the effect of their answers." Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; Gulf Colorado & Santa Fe Ry. Co. v. Harvey (Tex.

Com. App.) 276 S. W. 895; McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213.

Even though the testimony of all the other members of the jury, except that of Hammon, showed there was no misconduct on the part of the jury, yet, since the testimony of the juror Hammon does show misconduct, under all the decisions, the Court of Civil Appeals was authorized to conclude, in passing upon the sufficiency of testimony on this subject, as it did, in effect, that the trial court was not authorized, under the testimony, to reach the conclusion it did on this matter, it being one of fact. So as the record is presented to us, while the trial court determined as a fact there was no misconduct of the jury, the Court of Civil Appeals had decided that there was such misconduct, we are bound by the opinion of the Court of Civil Appeals on this subject, which is to the effect that the jury agreed in advance to determine one question, and then to answer the special issues in harmony with that question, the practical effect of which was to so answer the special issues as to render a verdict in favor of the plaintiff in error.

The juror Hammon says: "After we decided that plaintiff was guilty of negligence and the defendant was not, and we found that plaintiff's negligence caused it, we took up each question and found in accordance with what we already found." In other words, the practical effect of this testimony was, that when the jury determined that the plaintiff was guilty of negligence and that defendant was not, to render a verdict in favor of the street car company and against Garrison and Garrison's wife. This is true, though the juror Hammon does not undertake to testify that what the jury did in answering the special issues was in pursuance to any agreement to answer the questions so as to conform to the result of the ballot taken as to whether Garrison or the street railway company were negligent. Keeping in mind the fact that the testimony of the juror Hammon, showing misconduct, is not directly contradicted by the testimony of any other juror, and keeping in mind the further fact that this testimony of this juror unquestionably shows misconduct, within the meaning of article 2234, under the cases heretofore mentioned, we are forced to the conclusion that the evidence as to misconduct is conflicting, and, where the evidence as to misconduct is conflicting, the trial court's finding was subject to review by the Court of Civil Appeals, and the Supreme Court is bound to conform to the facts found by the Court of Civil Appeals.

However, the plaintiff in error contends that even though there was misconduct shown, yet the record affirmatively shows that, under the testimony, no other verdict

could have been rendered than what was rendered. To determine whether this contention is correct would require an examination of the statement of facts and a conclusion as to the weight to be given to the testimony of each witness testifying. It is the exclusive privilege of the Court of Civil Appeals to pass upon the facts of a case, and where that court has reached a finding of fact based upon some testimony, this finding is binding upon the Supreme Court. Moreover, it is our opinion that when each of the matters presented by the testimony relating to each one of the numerous issues submitted to the jury in this case is considered, and the uniformity with which the answers of the jury were made in harmony with its original conclusion, we are of the opinion that the misconduct of the jury, as shown by the testimony of the juror Hammon, may have had an unfavorable effect upon the legal rights of the defendant in error.

The Supreme Court of this state, in Cas-stevens v. Texas & Pacific Ry. Co., 32 S.W. (2d) 637, 639, 73 A. L. R. 89, speaking through Judge Greenwood, has approved the following rule as stated by the Supreme Court of Minnesota in Woodbury v. City of Anoka, 52 Minn. 332, 54 N. W. 187: "Where the misconduct may have had an effect unfavorable to the defeated party, the other party may be permitted to show that in fact it did not have such effect. But that would have to appear very clearly—so clearly as to leave no doubt as to the fact. When it may have had an unfavorable effect, it would be unsafe to allow any speculation whether in fact it did or not." Judge Greenwood, in the Cas-stevens Case, quotes with approval from Moore v. Ivey (Tex. Com. App.) 277 S. W. 106, the following: "That whenever 'it is reasonably doubtful whether or not the improper conduct affected the amount of the verdict or the decision of any other material issue, the verdict should be set aside by the trial judge; if, in such a case, a new trial is not granted, there is an abuse of discretion by the trial judge, and reversal becomes the duty of appellate courts.' "

The defendant in error in this case was entitled to a trial according to the forms of law by an impartial jury. The case was submitted on special issues, and there was no complaint made by either party as to either the manner in which this presentation was made by the trial judge to the jury or as to the substance of its issues. Had the jury followed the instructions of the trial court, it would have simply answered the issues presented in the charge after giving due consideration to the testimony bearing upon any particular issue. It is true the jury may have taken up the issues in any order it may have seen fit, but clearly the jury had no authority to determine any other special issues, except those embraced in the charge, nor, indeed, had the jury any authority to decide the whole case as upon a general charge, and yet that is what the jury did in this case, according to the testimony of the juror. Hammon. It first decided what the jury considered a controlling fact, and after having done that the jury proceeded to answer the special issues, so as to make these answers harmonize with the injected issue, which had already been decided. To say that such a proceeding secured to the defendant in error a trial, according to the forms of law by an impartial jury, is to substantially declare the rules of procedure prescribed by the Legislature of this state for the trial of causes, to be subject to be set aside whenever, in the judgment of a jury trying a case, the ends of justice may require it. These rules of procedure are the result of the experience of the best legal minds of the Anglo-Saxon race through the past ten centuries, and the purpose of enacting them is to secure to the citizen the right to have his controversies with his neighbors settled by a court of competent jurisdiction in an orderly way.

As said in Simmonds v. St. Louis B. & M. Ry. Co., supra: "It is true that in this case the trial court overruled the motion for new trial on the ground of misconduct of the jury, but the Court of Civil Appeals overruled and destroyed the presumption that prevailed in the ruling of the trial court, that the jury was not guilty of misconduct in distinctly finding * * * that the jury was guilty of misconduct. By reason of the finding of the Court of Civil Appeals that the jury was guilty of misconduct * * * the rule laid down in Moore v. Ivey, G., C. & S. F. Ry. Co. v. Harvey, and McFaddin v. Hebert, supra, does apply." Tweed v. Western Union Telegraph Co., 107 Tex. 255, 166 S. W. 696, 177 S. W. 957; Marshburn v. Stewart, 113 Tex. 519, 254 S. W. 942, 260 S. W. 565; Zachary v. City of Uvalde (Tex. Com. App.) 42 S.W.(2d) 417.

As a drop of ink in a glass of clear water discolors the entire contents, so this misconduct of the jury has tainted its verdict, and courts will not speculate upon what effect the misconduct may have had upon the verdict, but are under the duty to set aside the judgment, based upon the tainted verdict. Such being the situation, there is no occasion to discuss Rule 62, the only other point presented by the application.

We therefore recommend that the judgment of the Court of Civil Appeals reversing that of the district court and remanding the case for another trial be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.