CITY OF AMARILLO V. M. I. HUDDLESTON.

No. 7656. Decided June 4, 1941.
Rehearing overruled July 9, 1941.
(152 S. W., 2d Series, 1088.)

*Underwood, Johnson, Dooley & Wilson,* of Amarillo, for plaintiff in reror.

It was error for the Court of Civil Appeals to overrule the findings of the trial court that no misconduct occurred when the remark claimed to be a misconduct was made after the jury had answered all issues and the verdict had been prepared. Payne v. Baker, 242 S. W. 343; Wells v. Ford, 118 S. W. (2d) 420; Southwestern Bell Tel. Co. v. Ferris, 89 S. W. (2d) 229.

*W. T. Brothers,* of Amarillo, for defendant in error.

The remark made by the juror was misconduct and affected the whole verdict. Moore v. Ivey, 277 S. W. 106; Dallas Ry. & Ter. Co. v. Garrison, 45 S. W. (2d) 185.

MR. JUSTICE SHARP delivered the opinion of the Court.

M. I. Huddleston filed this suit in the district court against the City of Amarillo, to recover damages for personal injuries which he claimed to have suffered on account of the negligence of the City. The cause was submitted to the jury on special issues, and in response to the answers of the jury made to such issues the trial court entered judgment for the City of Amarillo. Huddleston appealed to the Court of Civil Appeals at Amarillo, and the judgment of the trial court was reversed and the cause remanded for another trial. 131 S. W. (2d) 1095.

It is undisputed that Huddleston and Jack Burleson were operating a grader, pulled by a team driven by Burleson, and that the grader blade came in contact with a manhole, which was covered with dirt and hidden from sight, and that the grader was overturned and Huddleston was forced to jump from his position, and as a result thereof suffered personal injuries, for which he filed this suit.

In answer to the special issues the jury found, in substance, that the manhole complained of was near the west side of the alley; that it was not situated in an unusual place; that the City failed to inform Huddleston of the location of the manhole, but that the injuries received by him were not the result of such failure; that Huddleston had an equal opportunity with the City to know the location of the manhole; that Huddleston failed to keep a lookout; that such failure was negligence, and such negligence was the proximate cause of his injuries; that Burleson failed to keep a lookout, and such failure was negligence on the part of Burleson and a proximate cause of Huddleston's injuries. The jury further found that Burleson did not fail to stop the team as quickly as he could after the grader hit the manhole, and that Huddleston, with due regard for his safety, should have anticipated the possible presence of the manhole. The jury also found that the injuries sustained by Huddleston were not the result of an unavoidable accident, and that he sustained damages in the sum of $5,000.00.

The City contends that, under the state of this record, the Honorable Court of Civil Appeals erred in holding that the jury was guilty of misconduct in reaching its verdict; and for that reason reversing and remanding the cause.

It is undisputed that the issues had been read and the answers made thereto by the jury before the following matters occurred in the room where the jurors had retired to consider answers to such issues. On the motion for new trial only two jurors testified,—towit, M. V. Retherford and J. G. Cash. Retherford testified that at the time the verdict was completed and the jury was ready to bring in its verdict, someone suggested that the answers be checked. Other jurors said that they had all been answered and that they understood them. It seems that about this time juror Cash stated that they had given Huddleston $5,000.00, and that it was immaterial as to how the other issues were answered. Other jurors said the answers had been checked over and that they were all right; and that was all that was said about it. The juror Cash testified that after the jurors had answered all of the issues, someone suggested they had better recheck the issues, and that he, Cash, believed he made the statement that they had given Huddleston $5,000.00. Retherford further testified as to the method of the deliberations in the jury room, and stated substantially that after they had retired they took up the issues one by one, and there followed a friendly discussion among the jurors as to how the questions should be answered, until there was a unanimous agreement upon the answers to the issues. Retherford further testified with reference to the statement made by juror Cash, which statement was made after the issues were answered and the verdict had been prepared, and testified as follows:

"I aimed to answer the issues from the evidence presented on the stand, but I didn't understand it like I should. By that I mean, I didn't understand the effect of my answers. After I got out and studied it over, in my mind, I knew that I had made a mistake. A mistake as to the effect."

It is undisputed that juror Retherford heard the verdict read in open court, and that he did not raise any protest; that he heard the court ask the jury if that was their verdict, and they replied "yes."

The trial court heard the testimony relating to the motion for new trial, and held as follows:

"The Court being of the opinion and finding that no jury misconduct occurred while the case was being considered by

the jury, and it further being found by the Court that no alleged or claimed act of misconduct prejudiced the rights of the plaintiff in any way."

1 The law requires that each issue shall be submitted distinctly and separately, and that each issue shall be answered by the jury separately. Article 2189, Revised Civil Statutes. The law also requires that such answers shall be made by the jury without regard to the legal effect of their answers upon the judgment to be rendered in the cause, and without regard to the relation of any answer to the other issues submitted. 41 Tex. Jur., sec. 346. The principal object of the special issue statutes is to have the jury find the facts and the trial court render such judgment as the law demands. 41 Tex. Jur., secs. 217 and 390. Any other procedure would defeat the very purpose of the law in requiring special issues to be submitted to the jury for their answers. 41 Tex. Jur., sec. 346; Simmonds v. St. Louis, B. & M. Ry. Co. (Com. App.), 29 S. W. (2d) 989; Monkey Grip Rubber Co. v. Walton, 122 Texas 185, 53 S. W. (2d) 770.

The trial court complied with the statutes in submitting the issues to the jury. The jury complied with the terms of the law in answering each issue separately. The trial court likewise complied with the law in rendering judgment in conformity with the answers given by the jury. Because the jury answered that Huddleston sustained damages by reason of such injuries in the sum of $5,000.00, this did not authorize the trial court to render judgment for that amount in his favor. The effect of the jury's findings was that Huddleston, according to law, was not entitled to judgment against the City of Amarillo for any sum; and the trial court did not err in so holding.

2 The Court of Civil Appeals, as we interpret its opinion, predicates its reversal of the judgment of the trial court on the testimony of the juror Retherford as showing a doubt as to the improper influence of the statement made by the juror Cash, which statement was made after the issues had been answered and the verdict had been prepared, and the jury were ready to come into the court room and announce their verdict. The Court of Civil Appeals in its opinion has set out much of the testimony introduced before the trial court relating to the misconduct of the jury in making answers to the

issue submitted to them, and attaches much importance to the statement of one of the jurors to the effect "that it does not make any difference how the issues are answered, because we have given the man $5,000.00." This record shows indisputably that that statement was made after all the issues had been answered and the verdict had been prepared, and the jury were ready to return to the court room; and that there was no discussion on such statement, and no juror changed his views because of such statement.

This Court has repeatedly held that where misconduct of the jury is shown while considering and preparing their answers to special issues submitted to them, the cause will be reversed, unless the record clearly shows that such misconduct did not influence any juror in arriving at his answers to the issues submitted. Casstevens v. Texas, & P. Ry. Co., 119 Texas 456, 32 S. W. (2d) 637, 73 A. L. R. 89; Texas Employers' Ins. Assn. v. Chocolate Shop, Inc. (Com. App.), 44 S. W. (2d) 989; Texas & P. Ry. Co. v. Gillette, 125 Texas 563, 83 S. W. (2d) 307.

The rule stated above does not apply to the facts of this case. The evidence in this case is undisputed, and there is no conflict about what transpired in the jury room. The trial court heard the testimony touching the misconduct of the jury, and made its finding thereon. In discussing the effect of misconduct on the part of the jury in the case of Traders & General Ins. Co. v. Lincecum, 130 Texas 220, 107 S. W. (2d) 585, it was said: "The question of its materiality and probable effect upon the verdict must be measured and appraised in the light of the entire record of the trial—not by what some juror testified about his secret mental processes or hidden mental reaction to it."

Among the decisions cited in support of the conclusions reached by the Court of Civil Appeals in its opinion are the following: Walker v. Quanah, A. & P. Ry. Co. (Com. App.), 58 S. W. (2d) 4, and Warnack v. Conner (Civ. App.), 74 S. W. (2d) 719. It will be observed that in some of the cases cited to sustain the holding of the Court of Civil Appeals it appeared that the improper statement was made by one of the jurors before all the issues had been answered. The rule announced in those cases is in harmony with the rule announced by this Court. In this case, however, the statement complained of

was made after the issues had been answered and the verdict had been completed and prepared. The trial court found that no jury misconduct occurred while the case was under consideration by the jury, and further found that no alleged or claimed act of misconduct prejudiced the rights of Huddleston in any way. There being no dispute about the facts relating to the misconduct of the jury, this record presents only a question of law, and not a question of fact.

Counsel for Huddleston contends that the case should be reversed because of some statement made by O. L. Miller, one of the jurors, to the effect that he was prejudiced against Huddleston. The trial court heard testimony on this question, and made the following finding: "The court is of the opinion and further finds that no facts have been· disclosed that show any prejudice upon the part of O. L. Miller, one of the jurors, against the plaintiff, M. I. Huddleston, and it further being found by the court that no statement was ever made during the trial of the case or any other time prior to the filing of the motion for rehearing that the juror previously made the remark that he was going to take advantage of the plaintiff the first opportunity he had for doing so;" and therefore overruled the amended motion of. the plaintiff for a new trial. The foregoing contention of counsel is overruled.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

Opinion delivered June 4, 1941.

Rehearing overruled July 9, 1941.