**TRIANGLE CAB CO. v. TAYLÓR.**

No. 4429.

Court of Civil Appeals of Texas. El Paso.

July 12, 1945.

Rehearing Denied Aug. 23, 1945.

Judgment Affirmed Jan. 23, 1946.

See 192 S.W.2d 143.

Robert L. Holliday and Harold L. Sims, both of El Paso, for appellant.

Tom R. Files and Abner S. Lipscomb, both of El Paso, for appellee.

McGILL, Justice.

Appellee, Allen C. Taylor, sued appellant, Triangle Cab Company, to recover compensatory damages for personal injuries received by him as a result of a collision between a motorcycle on which he was riding and a taxicab driven by appellant's employee, Henry Elkins. The collision occurred March 9, 1942, on Wyoming Street just west of its intersection with Williams Street in the City of El Paso, Texas. Wyoming Street runs east and west and is intersected by Williams Street which runs north and south. Just prior to the collision, the taxicab was traveling in a westerly direction on Wyoming Street and the motorcycle was to its rear traveling in the same direction. Immediately after the taxicab passed Williams Street, it slowed down or stopped and the motorcycle crashed into the left portion of its rear bumper. Appellee was thrown into Wyoming Street and suffered serious injuries. Trial to a jury resulted in answers to special issues on which judgment was rendered in favor of appellee for $7,915.89, of

which $415.89 was for necessary medical treatment. Appellant has duly perfected its appeal.

The jury found that just prior to the accident, Henry Elkins: (1) made a sudden stop of the taxicab, (4) slowed down the taxicab in a sudden manner, (7) failed to give a signal of his intention to slow down the taxicab, (12) stopped the taxicab without first seeing that there was sufficient space for the movement to be made in safety, and (14) failed to give a plainly visible signal of his intention to stop the taxicab; (It was alleged that (12) and (14) violated Article 801, subdivision (E) of the Penal Code of the State of Texas and Section 19, subdivision (b) of a Traffic Ordinance of the City of El Paso approved May 16, 1940); that each and all of the above acts was negligence which was a proximate cause of the accident; also (6) that Henry Elkins failed to keep such lookout for other vehicles behind him as a person of ordinary prudence would have kept under the same or similar circumstances and that such failure was a proximate cause of the accident. They answered in the negative defensive issues inquiring whether just prior to the accident appellee (17) failed to keep such lookout for other vehicles ahead of him as a person in the exercise of ordinary care would have kept under the same or similar circumstances, (19) operated his motorcycle at a greater rate of speed than a person of ordinary prudence would have operated said motorcycle under the same or similar circumstances, (21) operated the motorcycle nearer to the rear of the taxicab operated by Henry Elkins than a person of ordinary prudence would have operated same under the same or similar circumstances as he proceeded in a westerly direction along Wyoming Street behind said taxicab, and (23) failed to turn his motorcycle that degree to the left which a person of ordinary prudence would have turned said motorcycle under the same or similar circumstances.

In connection with the submission of Question No. 25 relating to damages, the court permitted consideration of the following elements of damages: (c) the probable loss in appellee's earning capacity down to the date of the trial, and (d) the probable loss of such earning capacity which he would reasonably and probably suffer in the future beyond the trial. Appellant objected to the manner and form of submission, especially to (d) because there was no evidence from which the jury could ascertain such loss and the undisputed evidence showed that appellee's earning capacity had not been impaired since the accident, but that he was earning more than he did at the time of the accident. Appellant presents points assigning errors because the court overruled this objection and rendered judgment including future loss of earning capacity as an element of damages.

It is said that appellee did not plead any damages for future loss of earning capacity. The objection did not go to the pleading. Appellant suggests that this lack of pleading renders the judgment fundamentally erroneous. The issue of damages was tried and submitted without any objection to the insufficiency of appellee's pleadings by appellant. Therefore it can not raise the issue of insufficiency of appellee's pleadings for the first time on appeal. Rules 90 and 67, Texas Rules of Civil Procedure; Bednarz v. State, 142 Tex. 138, 176 S.W.2d 562.

Appellee testified that he was 44 years of age, that at the time of the accident he had been employed in the United States Post Office for the past thirteen years, during the last five years of which he worked as a stamp seller at the stamp window. Prior to that time he was on the extra list and was assigned to other work where he was needed, that his salary was $175 per month at the time of the accident and was $175 per month plus $300 per year less deductions at the time of trial, that he returned to work in July 1942 and went back to the stamp window and with the help of his friends did the same kind of work he was doing at the time he was injured, that he was still at the stamp window doing the same kind of work he did when he started at the stamp window five years before; that he was under civil service and expected to hold his job; that he does his work sitting down, but was subject to be assigned to work requiring him to stand up; that he has a normal walk except that one leg is one and one-quarter inches shorter than the other which interferes with his walk and bothers him when he tries to stand. The medical testimony was sufficient to show that appellee suffered a fracture of his left hip and left collar bone; that he will have at least twenty percent limitation of motion in that hip; that his left leg will be shorter than his

right by one and one-quarter inches permanently, and he will walk with a limp and will not be able to carry on the same class of work with the same efficiency as before he was injured.

■ "The law only exacts the kind of proof of which the fact to be proved is susceptible, but it does exact that." Dallas Con. Elec. St. R. Co. v. Motwiller, 101 Tex. 515, loc.cit. 521, 109 S.W. 918, loc. cit. 921.

In Texas & P. R. Co. v. Bowlin, Tex. Civ.App., 32 S.W. 918, 919 (writ refused) the plaintiff alleged that he suffered and during his life would continue to suffer the loss of sight in his left eye. There was evidence that he was a farmer, but no evidence of any peculiar damage to him as such was offered. The charge submitted his impaired ability generally to earn a livelihood in the future without reference to any particular pursuit. It was held that the issue submitted was within the pleadings and proof. The court said: "The general rule undoubtedly is that whatever damage, though the natural, is not the necessary or obvious, result of an injury, is classed as special damage, and must be so alleged; that is to say, had defendant in error sought to recover damages on account of diminished capacity to earn money in a particular vocation, the facts in relation thereto must have been alleged. Where, however, the capacity to earn a livelihood generally, without reference to any particular calling, is obviously impaired, as it must be conceded it would be by the loss of so essential an organ as that 'little member' that 'gives life to every other part about us,' the damage should be classed as general, and not special. The object of the rule is to prevent a surprise upon the defendant. Where the resultant damage, therefore, is obvious, the reason of the rule is wanting."

In Dallas Con. Elec. St. R. Co. v. Motwiller, supra, the injured party was a stenographer and there was no evidence of her earning capacity as such. There was evidence which indicated that she had suffered an injury to her hip joint which shortened her limb about three-quarters of an inch, prevented her from walking to and from her work as she had done before she was injured, and compelled her to ride the street car. The Court of Civil Appeals certified to the Supreme Court the following question: "Question 1. Where the evidence shows a general impairment of capacity to earn money, but fails to show what could be earned in any particular avocation, is it error for the court to charge the impairment of capacity to earn money as an element of damage? Or, in other words, under the foregoing statement was the charge error?"

The Supreme Court answered that the charge was not erroneous in submitting the element of damages referred to. Apparently the basis for the holding was that the plaintiff's incapacity to walk to and from her work showed a diminution of her earning capacity in her particular vocation. However, the Court of Civil Appeals in affirming the judgment of the trial court, 51 Tex.Civ.App. 432, 112 S.W. 794, 796, said: "Was it proper for the court to tell the jury to consider in determining the damages 'her impaired ability to earn money'? The allegation of impaired capacity is to 'earn money at her ordinary occupation, or any other for which she is qualified during the balance of her future life.' At the time of trial, she was engaged as a stenographer, but the proof does not show what salary she received before and after the injury. This would preclude a recovery for any special damages for impaired ability in that particular avocation, but we see no reason why a recovery could not be had for general impairment to earn money", and held that while the evidence did not show any basis for the recovery of any special amount for diminished capacity in the avocation of stenographer, it did show in a general way that the appellee's capacity was diminished for that as well as for all other avocations. The Supreme Court refused application for writ of error in this case.

In St. Louis Southwestern R. Co. of Texas v. Niblack, 53 Tex.Civ.App. 619, 117 S.W. 188 (in which the injury was a broken rib and a hernia or rupture in the left groin of a nurse which incapacitated her from following her profession), the court discussed and followed the rule of the Bowlin and Motwiller cases. Writ of error was refused by the Supreme Court. See also McAlister v. Miller, Tex.Civ.App., 173 S.W.2d 339, writ refused, want of merit.

In McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710, 712, the Supreme Court said: "In a personal injury suit the amount which the plaintiff might have earned in the future is always uncertain, and must be left largely to the sound judgment and discretion of the jury. However, the verdict must be based on something more than

mere conjecture. It must be an intelligent judgment, based upon such facts as are available. *Even where the injury is of such a serious and permanent nature that loss of earning capacity is the necessary result, proof is required to show the extent and amount of the damages.* International & G. N. R. Co. v. Simcock, 81 Tex. 503, 17 S.W. 47." (Italics ours.)

In the cited case of International & G. N. R. Co. v. Simcock, supra, the objection to the charge was that "the evidence does not show any damages occasioned by loss of time." No complaint was made about that portion of the charge which permitted consideration of "permanent diminution of his capacity to work and earn [money]" as an element of damages. The italicized portion of the quotation from McIver v. Gloria, supra, is dicta and we think it not controlling in view of the specific holdings in the cases above cited. Here there is no evidence to show the extent and amount of appellee's loss of earning capacity in his particular business or profession, but the nature of his injuries is such as to show a diminished earning capacity generally—in any business or profession. This constitutes a sufficient showing to meet the objection to the charge.

In Martin v. Weaver, Tex.Civ.App., 161 S.W.2d 812 (writ refused, want of merit) relied on by appellant, a remittitur was voluntarily filed by Weaver on his motion for rehearing. The motion was granted. The judgment of this court was set aside and the judgment of the trial court affirmed. Separate applications for writ of error were made by Martin and 94 Transportation, Inc., each of which was refused for want of merit. The Supreme Court therefore did not pass on the question of impairment of future earning capacity discussed in that opinion. In that case, so far as the evidence showed, the plaintiff's wife had never been employed. No showing was made as to her physical health before the accident. It was shown that she had driven an automobile. Here there is evidence of actual earnings before and after the injury. Regardless of expressions in the opinion in Martin v. Weaver, that case is clearly distinguishable on its facts from this case, on the point involved. There was no showing in Martin v. Weaver that there was not better proof available; here it affirmatively appears that appellee furnished such proof as was available.

Appellant complains of the court's refusal to submit its Special Issue No. 1 which in substance inquired whether appellee at or just prior to the collision failed to keep his motorcycle under proper control and whether such failure was a proximate cause of the collision. As above shown, the court submitted as defensive issues the questions of proper lookout, excessive speed, operating the motorcycle too near the rear of the taxicab, and failure to turn the motorcycle sufficiently to the left. Certainly these constituted all the constituent elements raised by the evidence which could enter into the question of proper control. Under Rule 279, R.C.P., the court was only required to submit the controlling issues.

Control over a motor vehicle in operation is the control with reference to the movement thereof. It has reference to stopping, slowing or increasing the speed thereof or changing the course of the movement. Failure to exercise control is not the same thing as a lack of control. If an operator has the power to stop the vehicle and avoid a collision and does not do so, the cause of the collision cannot be said to be a lack of control but is due to a failure to exercise control. Control in this connection is control of speed or control of the course of the movement. Inability to change the course of the movement to avoid collision as a rule depends on the rate of speed. Of the very essence of control is the speed of the vehicle. Nearly every state, nearly every country have laws prescribing a maximum rate of speed. The logic justifying these laws is that beyond the maximum prescribed the driver has not proper control of the movement of the vehicle. In nearly all cases if an automobile is not operated at too great a speed the driver has same under proper control. To justify the submission of any other factual element of control, same must appear from the evidence. A mere collision between the vehicles cannot in and of itself supply this factual element. Where the only factual basis for the submission of the issue of proper control is the rate of speed, this issue being submitted, the issue of proper control is submitted. We fail to find any factual basis in the evidence here to raise an issue of proper control other than the speed of the motorcycle. Therefore, under the holding of this court in Blaugrund v. Gish, 179 S. W.2d 257, which was expressly approved

by the Supreme Court in 142 Tex. 379, 179 S.W.2d 266, the court did not err in refusing to submit the special issue requested.

It appears from appellant's Bill of Exception that plaintiff's counsel, during his opening argument, stated to the jury that he believed, according to the evidence, they would be justified in answering Issues 1 to 16, inclusive, "Yes"; that the evidence pointed in that direction, and that their answer "Yes" to Questions 1 to 16, inclusive, would be justified by the evidence and were the correct answers. He then walked to a blackboard, which was resting on its stand by the jury box, and which had been used by various witnesses to illustrate their testimony by a rough plat drawn thereon, purporting to represent the intersection of Williams and Wyoming Streets, and with chalk wrote thereon in large words and figures "1–16 inc. Yes." Defendant interposed no objection to this procedure. The blackboard was not introduced in evidence. It remained in the courtroom in full view of the jury until the jury was retired. When the jury retired, the bailiff approached the bench, and the court handed him the exhibits, which had been introduced in evidence, and the charge. The bailiff then asked the court if the blackboard should go to the jury room, and the court instructed him to take it into the jury room. The bailiff then conducted the jury to the jury room, taking the exhibits with him, and left them with the jury; he then returned to the courtroom and carried the blackboard into the jury room and placed it in full view of the jury, where it remained during their deliberations. The bill also shows that while both of appellant's counsel were present at the counsel table in the courtroom when the jury was retired, and one of them was present when the blackboard was carried out, neither of them heard the conversation between the bailiff and the court with reference to the blackboard or observed the bailiff when he carried it out of the courtroom. On noticing the absence of it from the courtroom, one of defendant's counsel learned from the court that it had been taken to the jury room, and thereupon moved the court to declare a mistrial. The court denied the motion.

By appropriate points, appellant assigns error because of the court's failure to grant it a new trial because of the improper argument and improper action of the plaintiff's counsel in writing on the blackboard, as indicated, and because of the error of the court in instructing the bailiff to take the blackboard into the jury room; and in overruling defendant's objections to such action, and its motion for a mistrial.

■■ The court's action in instructing the bailiff to take the blackboard to the jury room was clearly erroneous; the blackboard had not been introduced in evidence. Rule 281, T.R.C.P., prescribes what the jury may take with them on retiring. By the inclusion of "any written evidence", the Rule, by necessary implication, excludes any written exhibit or illustrative writing or drawing which has not been introduced in evidence.

■ In Putnam Supply Co. v. Chapin, Tex.Civ.App., 45 S.W.2d 283, affirmed and expressly approved in Chapin v. Putnam Supply Co., 124 Tex. 247, 76 S.W.2d 469, it was held that error appearing, because of the Court's furnishing the jury with the pleadings in the case, a reversal should follow unless it affirmatively appeared from the record that such error was harmless. This was said to be a general rule applying to errors in the admission or rejection of evidence, improper argument of counsel and misconduct of the jury. The rule has not been changed by the new Texas Rules of Civil Procedure so far as it applies to improper argument of counsel. Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302; American Employers' Ins. Co. v. Kellum, Tex.Civ.App., 185 S.W.2d 113, writ refused.

It has been changed and is no longer applicable with reference to misconduct of the jury. Rule 327; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 464.

■ We think the rule of the Chapin case has been changed by Rule 327, and is no longer applicable where the error consists of the reception of written illustrative matter not introduced in evidence, such as the blackboard in this case. The blackboard comes within the category of "other testimony" mentioned in the Rule, and the rule enunciated in Barrington v. Duncan, supra, applying to misconduct of the jury, also applies here. That rule "imposes upon the party asserting misconduct the burden not only of proving by a preponderance of the evidence that such misconduct occurred, but also of showing that such misconduct probably resulted in injury to him. If the evidence is conflicting on the question as to whether or not the misconduct ac-

tually occurred, the decision of the trial court either way on that question should be accepted as final. When misconduct is established, the question of injury is one of law for the reviewing court. Under the above-quoted rule both the trial and reviewing courts have the right to view the matter in the light of the entire record. By the entire record we mean the evidence heard on the motion presenting misconduct, the evidence on the main trial, and any and all other parts of the record which may throw light on the question of injury."

 There is no question but that the blackboard was placed in the jury room by the bailiff, following his instructions from the court; therefore, the only question for our determination under the above rule is whether, from the entire record, appellant has shown by a preponderance of the evidence that injury probably resulted to it therefrom. This is a question of law. The trial court found (No. III) that: "Every member of the jury observed the bailiff bring the blackboard into the jury-room and place it on the floor against one of the walls of the room. No member of the jury observed the writings or notations or markings on the blackboard at any time during its deliberations, and no member of the jury referred to the blackboard for any purpose during the deliberations, and no member of the jury refreshed his memory by observing any notations upon the blackboard." These findings are not challenged.

 We have examined the entire record.

"A new trial should be granted if it appears that the verdict probably was influenced by the jury's consideration of a document not introduced in evidence which improperly found its way into the jury room." 31 Tex.Jur. Page 47, Sec. 40, citing City of Ft. Worth v. Young, Tex.Civ. App., 185 S.W. 983. (Pleading in another suit).

"But a new trial should be denied if it appears that such writing did not materially influence the verdict." Id., citing Barton v. Green, Tex.Civ.App., 62 S.W.2d 193, writ dismissed (Map.)

In Chapin v. Putnam Supply Co., supra [124 Tex. 247, 76 S.W.2d 470], Judge Sharp said: "We do not mean to hold that it would be error in all cases for the jury to take with them in their retirement the pleadings in the case. The test to be

applied is whether or not, under all the facts and circumstances surrounding the trial, the verdict has been probably affected by the use of the pleadings in violation of the statutes."

In Brooks v. Temple Lumber Co., Tex. Civ.App., 105 S.W.2d 386, in making his argument, counsel wrote on a blackboard in the presence of the jury figures showing the dates and amounts of timber cut prior to January 28, 1933, according to the testimony. After the jury had retired, some member returned to the court room and copied such figures from the blackboard and the jury accepted them as correct as to the dates and amount of the timber cut. It was held that as the record showed no conflict as to the dates and amounts of timber cut, no injury was shown by such conduct. See also Dunman v. South Texas Lumber Co., Tex.Civ.App., 252 S.W. 274, loc.cit. 276 (verification to an account), where the court said: "Appellant made no proof that the jury even read the verification attached to the account while deliberating on the case; nor did he make any proof that any juror was influenced in the least thereby in arriving at a verdict in this case. The mere fact that a jury may take in retirement something they should not take, in the way of papers or evidence, is not misconduct on their part, in absence of a showing that they had read and considered the same in arriving at a verdict in the case." Smith v. Young, Tex.Civ. App., 147 S.W.2d 859, loc.cit. 861. (Plaintiff's copy of court's charge with pencil notations on it.)

 We have concluded that appellant failed to show that the court's error in sending the blackboard to the jury room resulted in injury to it; further, that it affirmatively appears from the entire record before us that the fact that the blackboard was placed in the jury room did not materially influence the jury in arriving at their verdict. We think this is conclusively shown by the above findings of the trial court, which we approve and in which we concur as supported by the undisputed evidence. The fact that the request by the bailiff, and the court's instruction to him, with reference to the blackboard, were made in an ordinary tone of voice, sufficiently loud to have been heard by the jury as shown by the court's finding, is, we think, immaterial in view of the findings above quoted. We are also of the opinion that the action of plaintiff's coun-

sel in writing on the blackboard the words and figures "1–16 inc. Yes.", in connection with his opening argument, though erroneous, was not so prejudicial that it could not have been cured by proper instruction, and that appellant, therefore, waived the error by its failure to object. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054.

Appellant concedes that the oral argument was unobjectionable, since its appeal to answer Issues 1 to 16, inclusive, in the affirmative was based on counsel's opinion that such answers were justified by the evidence. The writing on the blackboard must be considered in connection with the oral argument. When so considered, any prejudicial inference from the writing, that the questions should be answered without regard to the evidence, could have been cured by an appropriate instruction to disregard the writing or to consider it only in the light of the evidence. We overrule these points.

Appellant's remaining points complain of the court's refusal to grant it a new trial because of misconduct of the jury in discussing liability insurance, and in finding as a fact that there was no such discussion prior to the signing of the verdict by the foreman, such finding being against the overwhelming weight and preponderance of the evidence. Eleven jurors testified on the motion for a new trial. Their testimony covers approximately fifty pages in question and answer form. We copy the court's Finding V relative to insurance:

"After all of the questions had been answered, the Foreman had signed the verdict, and requested the Bailiff to notify the Court that the jury was ready to report, substantially the following discussion about insurance was had: Some juror inquired as to whether the Defendant might have had insurance, to which another juror stated that he understood that all taxicabs were required to carry insurance. Another juror then remarked that if Defendant had insurance in the company represented by Bray, it would not do the Defendant any good. Then a juror stated it would not make any difference anyway for the Defendant would have to pay premiums if insurance was carried, and, if not, then it would likely have to pay the amount of the verdict, or the amount found against the Defendant. Then some other juror stated that premium rates would probably go up pretty high after the case was over.

"No discussion with reference to insurance was had prior to the signing of the verdict by the Foreman."

A complete analysis of the testimony would serve no useful purpose and unduly prolong this opinion. The jurors differ as to what they heard relative to insurance. The foreman testified that he heard some one ask if appellant had insurance and whether it or the insurance company would have to pay the damages; that some one spoke up and said, "Yes, they had liability insurance because they are required to carry that insurance"; that some one mentioned about wondering whether it was the same insurance they had been reading about in the papers—about Tommy Murtha trying to make all taxis carry insurance with an Albuquerque company; that some juror made a statement that "He sure bet insurance rates for taxis would sure take a jump after this case was over"; that three or four jurors took part in the discussion; that all this took place either before the first question was answered or just afterwards. On cross-examination, he testified that the discussion lasted one or two minutes, and that this was the only time insurance was discussed. Two jurors testified that they heard one or more remarks similar to those testified to by the foreman; one, that such remarks were made before any of the questions were answered, the other that they took place before the last two questions were answered. One juror heard no remarks. Five heard one or more similar remarks, but were uncertain when they were made. One juror testified that similar remarks were made after they were all through with the case, that some of the men were in the rest room and they were "fixing to leave—sitting around talking."

"Q. But your best recollection is that it was after the verdict, that is, after all questions had been answered and the verdict signed by the foreman? A. I am positive of that."

Another juror testified that insurance was mentioned, but there was no discussion.

"Q. After the questions had all been answered? A. Yes, after the questions had all been answered.

"Q. And the verdict signed by the Foreman? A. No, I wouldn't be positive the verdict had been signed.

"Q. But all questions had been answered? A. All questions had been answered.

"Q. You are positive of that? A. Yes."

It is apparent that this evidence was conflicting as to whether the misconduct occurred before or after the verdict had been reached and signed. The remark to the effect that insurance rates for taxis would take a jump after the case was over, to our minds, indicates that the questions, including those inquiring as to the amount of damages, had been answered when it was made. In any event, a fact issue was presented, and the trial court's finding thereon is conclusive in the Appellate Courts. Price v. Biscoe, 141 Tex. 159, 161, 170 S.W. 2d 729. We are not here concerned whether such finding is against the overwhelming weight or the preponderance of the evidence. Since the misconduct occurred after the issues had been answered and the verdict signed, appellant was not prejudiced thereby. City of Amarillo v. Huddleston, 137 Tex. 226, 152 S.W.2d 1088.

The judgment is affirmed.

### On Motion for Rehearing

Appellant's assignment in its motion for rehearing that we erred in refusing to consider its point that the finding of the trial court that there was no discussion by the jury with reference to insurance prior to the signing of the verdict by the foreman was against the overwhelming weight and preponderance of the evidence is sustained. The following language of the opinion in Price v. Biscoe cited by us: "Either finding would support his order overruling the motion for a new trial, and his finding is conclusive in the *appellate courts*" (italics ours), when considered with the language immediately preceding it (170 S.W.2d loc.cit. 731, par. 2, last col.) and the testimony in that case is applicable to Courts of Civil Appeals only where the trial court's findings are supported by sufficient evidence. Estep v. Bratton, Tex. Civ.App., 24 S.W.2d 465, loc.cit. 469; Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770, loc.cit. 773, par. 4.

When misconduct of the jury is alleged as a ground for a new trial, though the evidence as to such misconduct be conflicting, the trial court's finding thereon is subject to review by the Court of Civil Appeals. Dallas Ry. & Terminal Co. v. Garrison, Tex.Com.App., 45 S.W.2d 185; 31 Tex.Jur. page 176, Sec. 164. The same rule applies in this case as to the finding to the effect that all the questions had been answered and the verdict had been signed by the foreman before the discussion about insurance occurred. We therefore withdraw the sentence appearing in the last paragraph of our original opinion reading: "We are not here concerned whether such finding is against the overwhelming weight or the preponderance of the evidence."

We have again read all the testimony offered at the hearing on the motion for a new trial. In view of the conflict between the positive testimony of the foreman Erhard and the jurors Lewis and Johnston as to the stage of the deliberations at which remarks about insurance were made and the vague and indefinite character of the testimony of the other jurors as to the relative times during their deliberations when they heard the remarks about insurance, we are unable to say that that portion of the trial court's findings which we deem material, i.e. that the discussion about insurance occurred after all the questions had been answered, is so overwhelmingly against the weight of the evidence as to be clearly wrong. 3 Tex. Jur. page 1107, Sec. 773. We therefore overrule this point.

Appellant also assigns error in our holding that the blackboard comes within the category of "other testimony" mentioned in Rule 327, Texas Rules of Civil Procedure, and that Rule 327 is applicable in determining whether the error of the trial court in instructing the bailiff to take the blackboard into the jury room requires a reversal. We are still of the opinion that Rule 327 as interpreted in Barrington v. Duncan controls, although we seriously doubt whether the blackboard does come within the category of "other testimony" mentioned in such rule. If it does not, it is indeed difficult to point out just what portion of the rule covers this particular kind of error. We can discern no valid reason why the rule should not apply to this situation as well as to the other matters therein specifically mentioned. As indicated in our original opinion, if we be in error on this point and the rule of the Chapin case controls, our holding is the same.

The motion for rehearing is overruled.