Adalberto NAVAR, Sr., et al., Appellants,

v.

STATE of Texas, Appellee.

No. 5444.

Court of Civil Appeals of Texas.

El Paso.

March 1, 1961.

Rehearing Denied March 22, 1961.

Scott, Hulse, Marshall & Feuille, George W. Finger, Taylor Nichols, El Paso, for appellants.

Will Wilson, Atty. Gen., H. Grady Chandler, Joe G. Rollins, Jr., Edward Ca-

zares, L. P. Loller, Asst. Attys. Gen., Austin, for appellee.

LANGDON, Chief Justice.

This is a suit for condemnation brought by the State of Texas, appellee herein, against Adalberto Navar, Sr., and others, appellants herein. This appeal involves two suits—cause No. 18,603 on the docket of the El Paso County Court at Law, pertaining to the condemnation of Tract 274, consisting of 3.01456 acres, or 131,314 square feet; and cause No. 18,606 on the docket of the same court, pertaining to the condemnation of Tract No. 275, consisting of 1.1389 acres, or 49,612 square feet. All of said land was owned by San Antonio and Farmers Dairies, a co-partnership composed of Adalberto Navar, Sr., and others, defendants in the court below. Special commissioners appointed by the court awarded the following sums: (1), $26,200 for Tract No. 274, or $.20 per square foot for said land; and (2), $37,500 for Tract No. 275, or $.75 per square foot for said land, including improvements located thereon. The total award of the Commissioners for both tracts was the sum of $63,700. The State appealed from the award of the Commissioners, and, on the trial of said cause, the jury fixed the value of Tract No. 274 at $.21 per square foot, or $27,575.94; and the value of Tract No. 275 at $.53 per square foot, or $26,294.36, or a total value of $53,870.30 for both tracts. Appellants having previously withdrawn the $63,700 awarded by the Commissioners, as authorized by statute, judgment was entered in favor of the State of Texas against the defendants for $9,829.70. Appeal has been perfected to this court.

Appellants' appeal is predicated upon six assignments of error, By Point One, it is contended that the trial court erred in overruling defendants' motion to strike all of the testimony offered by plaintiff's witnesses, Harold Legge and Clarence Harper, relating to the value of Tract 274, because such testimony was based solely on evidence of improved properties not comparable to the unimproved property (Tract 274 was unimproved) being condemned, and in refusing to instruct the jury to disregard their testimony.

Appellee's witness, Harold Legge, testified that the value of Tract 274 was $15,500 or approximately $.12 per square foot. In arriving at this figure, the witness testified that he used the market data approach, and that his appraisal was based on the K.B.S. Realty Company sale to Nalby Investment Co., Inc., on March 18, 1959, of 10.31 acres of land at $.13 per square foot, and a sale by Hollebeke to Whitfield on October 7, 1954, of six acres at $.09½ per square foot. He testified that *neither of the two properties were improved,* and that these properties were the ones that he gave the most weight to and upon which he placed the most reliance in arriving at his appraisal. Plaintiff's witness, Clarence Harper, testified that he used the market data approach, also, in arriving at his appraisal of Tract 274, and that its value was $.13½ per square foot, but the sales, if any, upon which his market data appraisal of the tract was made is not in evidence.

It is appellants' contention that the K.B.S. Realty Company sale and the Hollebeke sale were sales of *improved land,* and not *unimproved land,* as represented by the witness Legge; and, since Tract 274 was admittedly unimproved, and the two sales that formed the basis of the appraisal were sales of improved land, they did not constitute comparable sales, or sales of comparable land; therefore, the testimony of such witnesses as to the value of the unimproved tract sought to be condemned was inadmissible.

Appellants' Point One must be overruled. It is true that sales of improved lands are not comparable for the purpose of arriving at the value of unimproved lands in a condemnation proceeding, and that an appraisal based thereon would not ordinarily be admissible. Such, however, does not

appear to be the situation in the case at hand. Appellee's witness testified that the two tracts were sales of unimproved land. If this testimony was true, then the appraisal of the tract sought to be condemned was admissible. One of appellants' witnesses, a Mr. J. C. Holmes, testified that the same two tracts were sales of improved lands. If this testimony was true, the sales that formed the basis of the appraisal by plaintiff's witness were not comparable sales, and such evidence would be inadmissible. The testimony offered by the opposing witnesses conflicted. It was not the duty of the court to resolve this conflict in favor of either party; the credibility of the witnesses and the weight to be given their testimony is for the jury. The question of whether certain lands were improved or unimproved was in dispute. The law does not attempt to tell jurors what amount or kind of evidence ought to produce a belief in their minds. They may believe a witness, although he has been contradicted. They may believe the testimony of one witness and reject the testimony of other witnesses, or they may accept part of the testimony of one witness and disregard the remainder. McCormick & Ray, Texas Law of Evidence, section 3.

Appellants' Second and Third points are contentions that the jury was guilty of misconduct, in that they discussed and considered evidence other than evidence that was introduced in the trial of the case. It is asserted that the jurors read a newspaper article appearing in the El Paso Herald Post, which commented on the issues of the case on trial, and the newspaper's conception thereof, and from which they also learned the amount of the award made by the special commissioners. Appellants' Fourth point complains that the trial court erred in permitting Mrs. Collins Clayton, a former juror, when called as a witness at the hearing on appellants' motion for new trial, to testify, over appellant's objections, concerning her mental operations in arriving at a verdict. Since these three points are related to the same matter (the question of jury misconduct), they are grouped here for purposes of discussion.

On the first day of the trial, the El Paso Herald Post published an article entitled, "Jury Hears Road Land Value Case." On the morning following the publication of the article, appellee moved for a mistrial on the grounds that said article communicated to the jury the amount awarded by the Special Commissioners; that the furnishing of such information to the jury constituted reversible error, and that the court must presume that one or more of the jurors read and considered the article. Appellants opposed appellee's motion for mistrial, and same was overruled by the court.

Communications with a jury through newspaper articles have not infrequently been the subject of complaints of jury misconduct. It is conceded here, however, that neither party was responsible for the publication of the article or its contents.

Under Rule 327, Texas Rules of Civil Procedure, where the ground for the motion for new trial is misconduct of the jury because of any communication made to the jury, or that the jury received other testimony, the court shall hear evidence thereof from the jury or others, and may grant a new trial if such misconduct be proved; but the burden is imposed on the complaining party to show, not only that the matter complained of was actually communicated to the jury, but also to prove the materiality of the communication and show a reasonable probability that injury resulted therefrom.

On the question of jury misconduct, appellants offered only the testimony of Mrs. Collins Clayton, who was one of the jurors on the trial of the case. Mrs. Clayton testified that she had seen and read (on the first night of the trial) the newspaper article referred to herein. The next day, or the day after, during a recess, one of the jurors mentioned that he had read "about

our trial in the newspaper, and one or two others said well, we read it too,—" Afterwards, in the jury room, but after the jury had reached its verdict and was waiting for the court to receive the verdict, one of the jurors stated, "I wonder whether we did better or worse (than the special commissioners)—*we had already reached our decision when that remark was made.*" The witness also recalled that another juror commented that the commissioners had awarded $65,000, or something to that effect. It is not shown whether the last statement was made before or after the verdict was reached. No other evidence bearing on the question of jury misconduct was adduced.

Misconduct may be rendered immaterial by reason of the time that it occurred. Assuming that it is true that the witness, and perhaps other members of the jury, read the offending newspaper article during the course of the trial, there is no evidence that it was considered by the jury in arriving at its verdict. The only evidence tending to reflect that the article was discussed shows that such discussion was had *after* the verdict was reached.

It has been held many times that improper conduct of the jury which occurred after the verdict was completed, but before the same was accepted by the trial court, is not reasonably calculated to affect the verdict, and is therefore not reversible error. Triangle Cab Co. v. Taylor, 144 Tex. 568, 192 S.W.2d 143; Price v. Briscoe, 141 Tex. 159, 170 S.W.2d 729; City of Amarillo v. Huddleston, 137 Tex. 226, 152 S.W. 2d 1088.

We do not believe that the action of the trial court in permitting appellee, over the objection of appellant, to inquire of the witness (Mrs. Clayton) whether she was, or was not, influenced by reading the article, under the facts of this case, is material. In this case, Mrs. Clayton answered, "Well, I would say that we arrived at our verdict from the testimony given here in court,"

and that it did not influence her verdict. It has been held, time and again, that such evidence is not controlling on the question of probable injury, and other cases have held that a juror may neither bolster nor destroy his own verdict. While we agree that the question was improper and that any answer elicited from the witness could have no probative effect on the question then before the court, sufficient other basis existed to sustain the judgment of the trial court in overruling appellants' motion for new trial; and in such case, we may not assume that the trial court considered improper evidence in taking the action that it did.

Having carefully considered appellants' Points Two, Three and Four, we are of the opinion that same should be overruled.

Appellants' Fifth point is based on the complaint that the trial court erred in overruling defendants' motion for mistrial, made when plaintiff was interrogating defendants' witness, Martin Lederer, concerning the purchase price of Tract 274, on the grounds that said testimony was not admissible, and was so prejudicial to defendants that an instruction (which was made by the trial court) to disregard said testimony could not cure said error.

We recognize the rule that the cost to the owner of the land and the improvements subsequently made thereon is ordinarily not, of itself, evidence of the market value thereof. This rule would be particularly applicable where a considerable period of time has elapsed between the date of the purchase and the time of the litigation. 16 Tex.Jur. 572, section 248.

In the case at hand, the trial court sustained appellants' objection to appellee's questions concerning the cost to the landowner of the land sought to be condemned, but only after a number of questions and continuing objections thereto were urged by the appellants. Thereafter, the trial court instructed the jury not to consider the testimony relating to the purchase price of

defendants' property, but denied appellants' motion for mistrial.

The testimony complained of related to the purchase price paid by defendants for Tract 274. It was this tract that the special commissioners found had a value of $.20 per square foot, and on which basis they awarded defendants the sum of $26,200 for the part condemned. Appellants had previously accepted the award and had withdrawn such sum, as authorized by statute. On the trial of this case to the jury, the jury found that the same land (Tract 274) had a value of $.21 per square foot, and awarded defendants the sum of $27,575.94, which was $1,375 more than the special commissioners had awarded for the same land. Under the circumstances of this case, it does not appear that the jury was in any way prejudiced by such testimony. If error occurred, we consider it harmless here. Appellants' Fifth point is accordingly overruled.

Appellants' Sixth point is based on the contention that the witness, Joe Sweeney, called by appellants, was an employee of the State of Texas, within the meaning of Rule 213, Texas Rules of Civil Procedure, relating to the testimony of adverse parties in civil suits. The witness was a local real estate man, and was admittedly consulted by appellee regarding values of the lands sought to be condemned; he was not a regular employee of the State of Texas; he was never called as a witness in this case by the appellee; and we do not believe, in such case, that he was such an employee of a corporate employer as would bring him within the scope of the "adverse party rule." Hence, we find no error in the trial court's refusal to allow appellants to call the witness, Sweeney, as an adverse witness.

Having considered all of appellants' assignments of error, and having overruled them, the judgment of the trial court is affirmed.