**TEXAS EMPLOYERS' INSURANCE ASSO-
CIATION, Appellant,**

v.

**Howard RIGSBY, Appellee.**

No. 5001.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 9, 1954.

Rehearing Denied Dec. 29, 1954.

682

Collins, Garrison, Renfroe & Zeleskey, Lufkin, Thompson & Stripling, Nacogdoches, for appellant.

Fulmer, Fairchild & Barnett, Nacogdoches, for appellee.

R. L. MURRAY, Justice.

This is a workmen's compensation case. Howard Rigsby won a judgment on the verdict of the jury for total and permanent disability benefits against Texas Employers' Insurance Association, appellants, in the district court of Nacogdoches County. After its motion for new trial was overruled the appellant duly perfected its appeal.

The appellee Howard Rigsby was working as a common laborer at the plant of Texas Farm Products Company in company with Merrill Brewster and Clarence Dean when he was hurt. They were engaged at that time in installing a new fertilizer hopper. Rigsby raised the hopper, which weighed from 350 to 400 pounds, and in doing so suffered an injury to the lower portion of his back. Both Brewster and Dean testified to the occurrence, as did Rigsby himself. Rigsby was 46 years old at the time of the injury and did not work any more at his job after he hurt his back. He says that the pain hit him in the back while he was lifting the heavy hopper; that it hurt so that he almost went blind; since that time he has had a continuous aching across the low part of his back, extending down his left leg and that at times it caused him to shake as if he had the palsy. At the time of the trial his condition had become worse and the pain had gotten into both legs; that when he sits down sometimes his leg and foot seems as though they had gone to sleep, that he can walk along but if he makes a bad step "he just has to go down that's all;" that he never had these symptoms before the injury complained of. Shortly after the injury he was sent to the company doctor, Dr. Taylor, who diagnosed his condition as an injury to the muscles of the back and sent him to the hospital on October 1st. The doctor kept him in the hospital until October 9th off his feet in a jack-knife position and treated him with penicillin. Dr. Taylor then discharged him as ready for work. A week or so later Rigsby returned to the doctor and reported that his back still hurt, but Dr. Taylor could find no cause for such pain. On October 26th Rigsby went to Dr. McKinney who treated him and continued to treat him for the following two years until time of trial, about 26 or 27 times.

Dr. Paul Williams, an orthopedic surgeon, examined Rigsby in January, 1953. He was referred to Dr. Williams by Dr. Taylor.

Fellow-workmen testified that before he was hurt Rigsby was doing the same work as the other men and appeared to be in good physical condition.

Appellant's first and second points are that there was no evidence to support the jury's findings that Rigsby suffered total and permanent incapacity as a natural result of the injuries suffered by him September 13, 1951 and that the evidence was insufficient to support such a finding and such findings by the jury are so manifestly wrong and unjust that it demonstrates that the jury was actuated by passion and prejudice or some other improper motive. The appellant's position in urging these two points is that since only three medical witnesses testified at the trial of the case and two of them, Drs. Williams and Taylor testified that they were of the opinion that Rigsby's condition was not the natural result of any injury suffered on September 13, 1951, then there was no testimony to the contrary and the findings of the jury were therefore without support in the evidence. While Dr. McKinney did not testify that Rigsby's condition was unquestionably caused by his injuries he stated he had either spinal arthritis or a ruptured disc and both of these conditions are frequently caused by injury and he considered them major possibilities in the case. He also testified that the overriding and broadest diagnosis of Rigsby was low back injury; that other possibilities were a chronic, unstable back, spinal arthritis, rheumatism, possible disturbance of the intervertebral cartilaginous structure. These points are overruled.

■ The opinion evidence of experts in such a case is not conclusive. See Texas Employers' Ins. Ass'n v. Talmadge, Tex. Civ.App., 256 S.W.2d 945 by this court; Fry v. Dixie Motor Coach Corp., 142 Tex. 589, 180 S.W.2d 135; Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943.

■ The testimony of the appellee and the other lay witnesses who observed him at work before the injury was sufficient, when taken in conjunction with the testimony of Dr. McKinney, to support the findings of the jury and the judgment of the court that

Rigsby suffered the injuries complained of as a natural result of the injury of September 13, 1951. There was a large volume of testimony about Rigsby's back, the X-ray pictures made thereof and back conditions and injuries generally, which we will not attempt to set out in detail. It is sufficient to support the jury's findings that Rigsby's incapacity is permanent, and that it is a natural result of the injury complained of.

By its fifth point the appellant complains of the trial court's action in permitting counsel for plaintiff in the trial court, over its objection, to read to the jury that portion of plaintiff's original petition in which he alleged that he was entitled to recover 401 weeks of Workmen's Compensation insurance at the rate of sixty percent of his average weekly wage, not to exceed $25.00 per week. At the beginning of the trial, before the voir dire examination of the jury, appellant's counsel moved the court to instruct counsel not to inform the jury that he was seeking insurance at the rate of $25.00 per week for a period of 401 weeks and that counsel be prevented from reading that portion of his petition to the jury. The reason for the motion, as stated, was that it was not proper for the jury to know the amount of money plaintiff was seeking or the rate of compensation he was seeking, since to do so would inform the jury of these facts or impart information to them with which they are not concerned, since the jury would then be informed of the legal effect of its findings. In support of this point the appellant relies upon the case of Ex parte Fisher, 146 Tex. 328, 206 S.W.2d 1000 by the Supreme Court. We are unable to see any similarity between the instant case and that case. As we view the matter the portion of the pleadings complained of and read to the jury with the rest of the petition was a portion of the prayer which simply stated what the plaintiff was suing for. It was not improper to thus inform the jury, but if such an action could be regarded as improper, no harm resulted to the appellant so far as we can ascertain from this record. In fact, the jury by its answer to the issue inquiring how long his incapacity would continue did not answer any number of weeks but answered only "permanent".

The appellant complains in its third point that the trial court erred in not granting it a new trial because of appellee's counsel's comment in his argument to the jury on the failure of one Dr. Pennington to testify. It was developed from the testimony that Rigsby had suffered a back injury in 1949 and again in 1950 while working for Texas Farm Products Company. He was treated both times by Dr. Pennington, a doctor in Nacogdoches, and continued to work after his treatment. The portion of appellee's counsel's argument complained of was as follows: "I know that you all here expected to hear Dr. Pennington here to tell you what a bad shape he was in wasn't you? Well, he didn't come. That's all I am going to say about that, gentlemen." The appellant here says that by inference this argument was apparently stated by counsel to lead the jury to believe that if appellant had produced the doctor as a witness he would have testified that the prior injuries were of no significance and did or would not in any way contribute to the appellee's present or future disability or incapacity. It says that this was an improper comment on the failure of the opposing party to produce a witness not shown to be peculiarly under the control of that party, which is condemned in Service Mutual Ins. Co. v. Blain, Tex.Civ.App., 135 S.W.2d 745; San Antonio Public Service Co. v. Smith, Tex.Civ.App., 57 S.W.2d 179; Lottman v. Cuilla, Tex.Com.App., 288 S.W. 123. The argument was not improper under the circumstances, since Dr. Pennington had examined Rigsby and sent him back to work for the same employer at the time of the prior injuries and also the appellant had used him as a physician as much as it had any other doctor in Nacogdoches during the year and a half before the trial. See: Montgomery Ward & Co. v. Levy, Tex.Civ.App., 136 S.W.2d 663; Consolidated Underwriters v. Foxworth, Tex.Civ.App., 196 S.W.2d 87; Consolidated Underwriters v. Lowrie, Tex.Civ.App., 128 S.W.2d 421.

No objection was made to the argument at the time and it was raised for the first time in the motion for new trial. It cannot be viewed as of such a prejudicial nature that the court could not have cured any evil effects thereof if objection had been made at the time. See Aultman v. Dallas Railway & Terminal Co., Tex., 260 S.W.2d 596 and cases cited.

■■ By its fourth point the appellant complains of a comment by the court during the argument of one of counsel for appellee to the jury. Counsel made the statement, "Here you have an event which occurs which is reasonably calculated to cause the trouble which he is now suffering from and from that day on he has a —." Opposing counsel then made the objection that it was a misquotation of the testimony because "there was no evidence that the condition of which he has here can reasonably come from the strain that he alleged on September 13, 1951." The court overruled the objection and made the comment that, "He is taking that as his conclusion." Appellant in its argument views this remark by the court as being a comment on the weight of the evidence, which is forbidden by Rule 272, Texas Rules of Civil Procedure. This point is overruled. Counsel for appellant made no objection to the comment at the time and took no exception thereto. We do not believe the comment by the court was subject to the objection made. Such comment did not in any way state to the jury that counsel's conclusion from the evidence was a reasonable conclusion, but as we view it it was a statement overruling the objection that it was not based on any evidence in the record, containing the further remark that the statement by counsel was his conclusion from the evidence. Counsel is permitted in an argument to make reasonable deductions and conclusions from the evidence.

Appellant's sixth and seventh points complain of argument of counsel. No objection was made at the time of said arguments but the objection was made for the first time in the motion for new trial. It says that by the following two arguments counsel for the appellee informed the jury of the effect of their answers to certain special issues:

"Counsel for appellee, in his opening argument said: 'I say that No. 5 (referring to Special Issue No. 5), under the evidence should be answered permanent, there is no ifs and ands to it. We sued in this case for 401 weeks at $25.00 per week, according to the law in this case, no man ever heard of getting any more than he sues for or asks for.'"

■ Then counsel for the appellee made the following statements in his closing argument:

"'You know, as far as the question of causation is concerned it is a very prominent problem in this case, of course. The disability for which this man is entitled to be compensated is that disability which comes about as a natural result of the injury which occurred on September 13, 1951. There is no contention on our part that you should make any findings with respect to the duration of the disability here predicated upon the result of an injury alone occurring prior to that date, but let me call your attention to this thing in the court's charge. The court charges you in connection with the issue submitting the question as to the disability coming about as the natural result of the injury of September 13, 1951, he defines the term "natural results" and he says to you in so many words that thing is a natural result which either by itself or in conjunction with another cause or other causes produces that particular result, comes about in a natural and continuous sequence. So that while you must, Gentlemen, in order to answer Issues No. 4 and 5 and 6, you must find that the disability which you fix in response to those issues comes about as a natural result of the injury of September 13, 1951, you are not to exclude the disability simply because you may feel that prior injuries or prior physical conditions may in conjunction with that injury have produced the disability which he now suffers and has suffered from the time of that injury.'" These points are overruled. The first argument asked the jury to find their answer to Special Issue No. 5

from the evidence. The argument was not objected to and could have been cured by instruction by the court if it had been improper and a proper objection had been made. Even if it were erroneous the argument was harmless since the jury found the wage rate which reduced the compensation rate to $22.33. This is the wage rate which appellant's counsel contended for in his argument to the jury.

■ The second portion of the argument complained of did not inform the jury of the effect of their findings. The trial court had defined "natural result" and counsel was arguing his application of his definition to the various special issues. The argument informed the jury of nothing more than was contained in the issues themselves.

[9] Appellant's eighth, ninth, tenth and eleventh points complain of the court's receiving in evidence, over its objection, testimony that the appellant was the compensation insurance carrier for Texas Farm Products Company in 1949 and 1950 when Rigsby sustained other injuries, and permitting counsel to emphasize this testimony in his argument informing the jury they could consider these injuries in answering Special Issues Nos. 1 through 5 in determining whether Rigsby's disability was the natural result of the injury of September 13, 1951. We find no reversible error in these points, which are presented together in the appellant's brief. The testimony complained of was offered for the purpose of showing that the appellant had employed and was using the services of Dr. Pennington, who treated Rigsby when he received his prior injuries in 1949 and 1950, and thus he was available to the appellant as a witness. The appellant was contending on the trial that his prior injuries were the cause of his back trouble and appellee says that this testimony was admissible also to show that the appellant and the employer took an inconsistent position at the time of such injuries and regarded them as trivial. Substantially the same testimony as that complained of was in the record from the testimony of the witness Grimes, who testified without objection that the appellant was the carrier of the employ-

er's compensation insurance risk in September, 1950, and for several months prior thereto. We do not agree with the appellant's contention that the evidence was inadmissible because it was irrelevant and immaterial to the issues in this lawsuit.

The portions of the argument quoted and now complained of were not improper. It was concerned with a discussion of the court's definition of "natural result" and presented the appellee's views in that regard. The argument itself was not objected to at the time, and even if it were improper we do not believe that it was of the character which could not have been corrected by the trial court on proper objection at the time.

■ The appellant's twelfth, thirteenth, fourteenth, fifteenth, sixteenth and seventeenth points all assign error to various portions of the argument of counsel for the appellee, to none of which was any objection made at the time the argument took place. We regard none of these portions of the argument as improper in the first place, but hold that if they were, no reversible error is brought forward when objection was made for the first time in the motion for new trial. They were not of such a nature that the trial court could not have cured them if objection had been made.

■ Number 12 concerns the following incident. During the course of the trial Dr. Taylor had testified that Rigsby's abdominal muscles were not as tight and firm as they should be in a normal person because of his abnormal posture. Thereafter, while Rigsby was testifying, counsel for appellee requested Rigsby to remove a portion of his clothing from the upper part of his body and after this was done counsel struck Rigsby in the front of his body above the belt line, apparently for the purpose of demonstrating that the muscles were tight and firm in contradiction to Dr. Taylor. Then in his argument counsel stated, "I hit Howard Rigsby in the abdomen as hard as I could three times. Rigsby could sit on the stand all day and tell you how tight and

tense his muscles were and how strong they were and they would still be just words. So when you gentlemen could see in the nature of force applied to those abdomen muscles you could determine for yourself just how tight and firm they were." Appellant says this was unsworn testimony by counsel and hence reversible error. We do not agree. The incident took place in the courtroom on the trial of the case and the jury could determine from their observation of it whether counsel struck Rigsby as hard as he could three times, or whether he pulled his punches, or struck him only once or twice or did not strike him at all. Counsel's statement was a fair deduction from the incident enacted in the jury's view.

**■** Complaint is made of argument of counsel for appellee that the witness Dr. Taylor in his testimony found matters which he did not find in his examination of October, 1951. This was a permissible deduction from the evidence itself. The witness in his testimony and especially on cross examination testified in detail and told of many matters which were not contained in his report of Rigsby's condition which he made to the appellant in November, 1951.

**■** Counsel also argued that the witness, Dr. Williams, did not have before him all the information which had been brought before the jury on the trial, when he testified by deposition some time prior to the trial. This appears to be a proper deduction from the evidence. There was a large amount of evidence in the case which the doctor could not have known about.

**■** Counsel's argument that appellant's witness, Dr. Williams, gave his testimony without having had the benefit of the X-ray pictures taken by Dr. McKinney is complained of. This comment involved technical testimony about various X-ray pictures of Rigsby's back and the interpretations which the various medical witnesses gave to the pictures. The comment is supported by the evidence that the various doctors did not examine all the X-ray pictures of the others.

**■** Appellant says that another portion of counsel's argument accused counsel for the appellant of accusing counsel for appellee of getting a witness by power of persuasion to swear falsely on the trial. The argument complained of does make this contention, but appellee points out that it was made in answer to the following argument by counsel for appellant, in discussing the testimony of the witness Brewster: "You will remember and I stand on the record that he didn't know anything about Howard Rigsby getting hurt. And lo and behold then almost two years afterwards one of Mr. Fulmer's lawyers goes down to see him and he comes back up there and he says that he remembers distinctly that it happened about three or four o'clock in the afternoon when the records show in corroboration of his original statement that he only worked a half a day that day. Power of suggestion, maybe that's the way it came to pass. Power of suggestion to get him to contradict the record and also to contradict the statement that he has given theretofore. Doesn't that cause you to wonder? If all the rest of the evidence can't be viewed with a little bit of caution." Counsel had the right to answer this accusation as he did.

**■** The last portion of the argument complained of was that counsel for appellee, in his closing argument, in effect, said that Rigsby was injured when he was lifting the heavy hopper and that was an event which was reasonably calculated to cause his trouble. This is the same matter discussed above under appellant's fourth point. Appellant, under this point, says that such argument was not supported by the evidence, since no medical witnesses testified that Rigsby's injury of 1951 was the cause of his incapacity. As we have said before, we believe there was sufficient evidence in the record from which such a conclusion could be drawn, notwithstanding the opinion evidence of the doctors who testified to the contrary.

All of the appellant's points have been carefully considered and we believe they present no error and they are overruled.

The appellee presents a cross-point of error and thereby complains of the action of the trial court in overruling his motion for judgment based upon an average weekly wage of $41.19. The jury found by its verdict an average weekly wage of $37.21 and the court based its judgment upon such finding.

 The jury's finding was in response to Special Issue No. 14 which inquired what average weekly wage would under the evidence be just and fair to both parties. This issue was submitted under Subsection 3, Sec. 1 of Article 8309, Vernon's Annotated Civil Statutes of Texas. No objection was made by the appellee to this manner of submitting the issue of average weekly wage in the court's charge and no issue was submitted by the appellee to the court to be included in the charge under any other subsection of said article, particularly Subsection 2. We think that no error is shown by this point even if the evidence would have warranted submission of the average weekly wage question under one or another of the Subsections of the statute. If the appellee had desired the wage rate issue to be submitted under Subsection 2 of said Section 1, Article 8309, supra, he should have prepared such an issue and submitted it to the trial court with request that it be submitted in the court's charge. When he failed to do this he cannot complain of the wage rate found by the jury in answer to the issue submitted by the court. See: Traders & General Ins. Co. v. Yarbrough, Tex.Civ. App., 181 S.W.2d 305 and cases cited; Vanover v. Henwood, 136 Tex. 348, 150 S.W.2d 785.

 We do not believe under the facts here, where the injured employee himself had not worked for substantially the whole of a year and where the evidence shows other employees doing similar work and working substantially the whole of the year, each having different total earnings for the year and a different average weekly wage that the court could have properly submitted the average wage issue under Subsection 2. The court properly submitted the wage rate issue under Subsection 3, supra, that is, what average weekly wage was fair and just to both parties. See Texas Indemnity Ins. Co. v. Smith, Tex.Civ.App., 73 S.W.2d 578. Judgment under the jury's finding was not error.

Appellee in support of his cross-point says that the court should have entered judgment on the average weekly wage contended for by him, which was the highest average weekly wage of any of the other employees shown in the evidence to have worked substantially the whole of the year. He says that Hargrove v. Trinity Universal Ins. Co., Tex., 256 S.W.2d 73 is authority for this contention. From a study of the opinion in that case we are unable to discover any holding therein as the appellee contends for. In that case the injured workman sued for general injuries and specific injuries. The jury's findings supported a judgment for either the general or the specific injuries. The trial court entered judgment for the petitioner for the greater amount and the Supreme Court held that the trial court was correct in so doing. We are unable to find any help for appellee in that decision which would require a judgment here for an average weekly wage rate equal to the highest rate earned by the several workmen doing similar work.

Appellee's cross-point of error is overruled.

The judgment of the trial court is affirmed.