TEXAS EMPLOYERS' INSURANCE ASSO-
CIATION, Appellant,

v.

Lloyd F. RUBUSH, Jr., Appellee.

No. 16114.

Court of Civil Appeals of Texas.

Fort Worth.

June 17, 1960.

Rehearing Denied July 15, 1960.

Crowley, Wright, Miller & Garrett, William T. McGee and Kleber C. Miller, Jr., Fort Worth, for appellant.

Doyle Willis and George Busch, Fort Worth, for appellee.

RENFRO, Justice.

Based on jury findings of total and permanent disability, judgment was entered for appellee Rubush against appellant Texas Employers' Insurance Association.

In the past appellee had done both manual labor and clerical work. For eighteen months preceding his injury he was a laborer for Tasty Pie Co., loading, moving and unloading racks. While engaged in that work he broke his hip as a result of a fall. Following an operation he was on crutches, then a cane, then resumed use of crutches and was still using crutches at time of trial. Expert medical testimony offered by appellee showed "When this fracture is broken across here, all of the blood vessels that course along the bone are torn and injured, thereby cutting off a good portion of the blood supply. The only blood supply the head has remaining is one small vessel coming in the ligamentum teres into this area, a little small round ligament of the hip that carries the blood vessel, plus a few little reflective vessels that come along with the lining of the hip joint, they are all very small. The major portion of the blood supply comes up through the neck of the bone and into the head. And, 'Aseptic,' or, 'Avascular,' necrosis means a lack of blood supply. In other words, it just dies, similarly to the way that you would cut your finger off, the blood supply to it, by a tight band around it, the finger would become black, if you left it on there, and become gangrenous, or another way * * * and, if it's aseptic, that would be aseptic necrosis of the finger in the extreme." In the opinion of appellee's medical witness, appellee would become progressively worse and was totally and permanently disabled. Appellant's medical testimony was to the effect that appellee had a normal recovery and could do clerical work, but could not do the usual and ordinary tasks of a working man.

Appellant does not contend the evidence is insufficient to support the jury's findings of total and permanent disability.

In its first group of points the appellant complains of the following jury argument made by appellee's counsel:

(1) "Now then, Dr. Clayton and Dr. Bond, the both of them say—or Mr. Miller says that they say, I don't know, Mr. Miller says that they say, 'Throw away your crutches, put your weight down on that hip,' what would

you do if you were Mr. Rubush? Now do you want to send this man out here, ladies and gentlemen, let him put the weight down on that hip? And, * *."

(2) " * * * and Dr. Lipscomb told you that it was just like tying your finger and that it rots off black on the end, and you cut out the circulation, and it's gone, do you want to do this to this man? I don't think so. I don't think this jury wants the responsibility."

(3) (a) " * * * and, I tell you that he is a permanent cripple, ladies and gentlemen." and (b) "I don't care what the doctors say; this man is a physical wreck with a hip in the condition such as that—."

(4) "How many X-rays did these doctors for the insurance company bring up here, ladies and gentlemen? Just one; Defendant's Exhibit No. 1. Now, I want to know where the rest of them are? What's in them? Why don't they want you to see them?" and "All right, ladies, I submit to you that you draw your own inference from this, but I would tell you, would point out to you that the insurance company, and their doctors have brought one X-ray in here of this man."

(5) "And let's think about another thing, too, this insurance company, that Mr. Miller represents, insured that man in the condition that he was in at the time he went to work out there for those eighteen months, I don't—"

(6) "Now then, let's look, let's get an aspect which I think sometimes these cases take on an aspect of fairness, too. Let's see how fair this insurance company has been, how fair they have been with this man? Did they pay his hospital bills?" and "You folks heard the evidence in that regard. Mr. Miller doesn't want me to talk to you about it so I won't—"

(7) "If you answer the issues or decide the evidence the way that Mr. Miller would have you decide, then you tell this man that—"

No objection was made to arguments (1), (2) and (a) of (3).

Objections were sustained and the jury instructed to disregard arguments (4), (5), (6), (7) and (b) of (3).

We see no error in argument (7) for the statement was not completed and the jury was not informed what they would "tell this man" by the answers.

That part of argument (1) wherein the jury was asked, "what would you do if you were Mr. Rubush?", and argument (2) "do you want to do that to this man?" were improper but the harmful effect thereof could have been removed by instruction from the court. Kahn v. Green, Tex.Civ. App., 234 S.W.2d 131; Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478.

Argument (3) when considered in the light of the argument as a whole was obviously counsel's opinion as derived from the evidence and was so understood by the jury. As previously stated, (a) of argument (3) was made without any objection by appellant, and the jury was instructed to disregard (b) of said argument. We believe the instructions cured any harmful effect of the statement.

Objections to all the other arguments were sustained and the jury instructed to disregard the same.

Since the adoption of Rules 434 and 503, Texas Rules of Civil Procedure, the rule of presumed error no longer prevails. Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596.

The true test in determining whether reversible error is present is the degree of prejudice flowing from the argument, whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing

litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict. Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856; Rules 434 and 503.

Whether the argument influenced the verdict unfavorable to appellant is to be determined as a matter of our judgment in the light of the record as a whole. Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115.

All of the argument of which complaint is made is of the "curable" type. Wade v. Texas Employers' Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197. The court sustained all of appellant's objections and instructed the jury to disregard the offending argument. The presumption is that the instruction to disregard the argument was followed by the jury in its deliberations. 41–B Tex.Jur., p. 368, sec. 300. The record does not, by evidence or inference, indicate that the jury was probably persuaded to answer the issues contrary to what they would have answered had the argument not been made.

Based upon a careful study of the entire record, we cannot say that the arguments, singly or accumulatively, were such as were reasonably calculated to cause and probably did cause the rendition of an improper verdict.

Appellant contends it was error to allow appellee to testify to a prior inconsistent statement made by Dr. Clayton without laying a proper predicate. Dr. Clayton testified that in his opinion appellee could have gone back to light work in February, 1959, but that he could not do heavy work, "that's why I recommended light duty for the time being." Rubush was recalled and testified that Dr. Clayton, the last time he went to him, told him he "definitely could not go back to work on that job (Tasty Pie Co.)." It appears to us, that Rubush's statement was corrobative

of, rather than contradictory to, Dr. Clayton's testimony. In any event, since no one contended appellee was able to resume his regular work at Tasty Pie Co. in February, 1959, the error, if any, in the admission of the testimony was harmless.

By appropriate points appellant contends the court erred in refusing it the right to introduce in evidence all or portions of appellee's deposition.

It appears from the record that appellant's attorney cross-examined appellee extensively about his prior work and infirmities and prior inconsistent statements in his deposition. At one point the appellee answered: "you know you're a lawyer, I'm just a little old ninth grade man, * * *." He testified, however, that his lawyer and a court reporter were present when the deposition was taken, that appellant's counsel was not overbearing or overriding or anything of that nature and did not mislead him, that he was under oath, "But, you see, I'm used to dealing with these labor men, I'm not used to dealing with smart young lawyers," he repeated, however, that he knew he was under oath when the deposition was taken and that appellant's attorney was not overbearing or domineering. Later in the trial, while appellant's counsel was reading questions from appellee's deposition, appellee objected to a question about appellee's draft classification as being irrelevant and immaterial. Appellant's counsel stated, "Well, he about half denied it, and said it wasn't true, and accused me of overreaching him, and I think I am entitled to read it to the Jury and show them just what it was * * *." The objection was overruled and counsel continued for some time to read from the deposition. Appellee objected to a question as repetitious. The court ruled: "I'll stop both of you from going over the same evidence that we have been over before. We are not going all over that again. * * * Anything that has been asked him before, I'm not going to permit it to be gone over again." Thereupon the appellant's counsel stated that he had interrogated the witness about near-

ly everything that he wanted to read. He was then given the opportunity to read other parts of the deposition for a bill of exception

■ From the somewhat confused record we are unable to say that the court refused appellant the right to read anything into the record from the deposition except, as the court said, "anything that has been asked him before." In other words, the court meant to bar only repetitious statements. We do not find where the court refused to allow appellant to introduce in evidence from the deposition any specific contradictions or inconsistent statements made by appellee. We think appellee's own testimony shows clearly that the "smart young lawyer" did not mistreat him or overreach him in the taking of the deposition, hence it was not error to refuse to allow the whole deposition introduced to "show them (the jury) what it was."

■ While we think the court should have permitted the reception of the excluded portions of the deposition in evidence, still the doctrine of harmless error applies to rulings on depositions. Even though the trial judge errs in excluding a deposition, the judgment will not be disturbed on appeal if the rights of the objecting party have not been prejudiced. 15–A Tex.Jur., p. 139, sec. 67. We have examined all the evidence set out in the bill of exception and have concluded that it is not of such nature that its exclusion prejudiced the appellant's rights.

■ Appellant excepted to appellee's petition wherein he alleged that "he is entitled to recover the sum of Thirty-three Dollars ($33.00) per week for 401 weeks for his injuries and disability as provided by the Workmen's Compensation Act" and that "plaintiff recover Twelve Thousand Dollars ($12,000.00) in a lump sum * * *", and in the alternative asked that such pleadings not be read to the jury.

It is better practice not to read to the jury those portions of the pleadings with which the jury is not concerned. Texas Employers Ins. Ass'n v. Poe, 152 Tex. 18, 253 S.W.2d 645; Sisk v. Glens Falls Indemnity Co., Tex.Civ.App., 310 S.W.2d 118, 66 A.L.R.2d 1. In Texas Employers' Ins. Ass'n v. Rigsby, Tex.Civ.App., 273 S.W.2d 681, 684, however, an almost identical question was before the court. There the appellate court said: "As we view the matter the portion of the pleadings complained of and read to the jury with the rest of the petition was a portion of the prayer which simply stated what the plaintiff was suing for. It was not improper to thus inform the jury, but if such an action could be regarded as improper, no harm resulted to the appellant so far as we can ascertain from this record. In fact, the jury by its answer to the issue inquiring how long his incapacity would continue did not answer any number of weeks but answered only 'permanent'." In Texas Employers' Ins. Ass'n v. Logsdon, Tex.Civ.App., 278 S.W. 2d 893, 897, the court held, in discussing similar pleadings: "In our opinion, it was not reversible error in the case at bar to mention or refer to such weekly compensation rate in the presence of the jury or to have read that portion of the pleadings to the jury, * * *." To the same effect is the holding in Traders & General Ins. Co. v. Smith, Tex.Civ.App., 311 S.W.2d 91. The Supreme Court denied writ of error, n. r. e., in both the Logsdon and Smith cases. In view of the holdings in the above cases, we overrule the points of error.

■ Appellant in a group of points complains that the trial court erred in submitting issues Nos. 14 through 22 and in overruling its objections to said issues on the ground they were vague, ambiguous and confusing and constituted a comment on the weight of the evidence. Appellant had plead defensively that if appellee had any incapacity or loss of wage earning capacity such incapacity was due to a bad ankle, a prior heart condition, or a combination of those conditions; or that one or both of the alleged prior conditions contributed to any incapacity or disability appellee might have.

The issues of which complaint is made were defensive issues. They were so framed as to present to the jury the defensive matters plead by appellant. Without setting out the issues, we feel it sufficient to say they were not vague, ambiguous and confusing, but substantially followed appellant's pleadings.

We have considered all of appellant's twenty-nine points of error, and, believing reversible error has not been shown, overrule all points of error and affirm the judgment of the trial court.