**TRANSPORT INSURANCE COMPANY,**
Appellant,

v.

**John T. NUNN, Appellee.**

No. 14278.

Court of Civil Appeals of Texas.

Houston.

Feb. 6, 1964.

Rehearing Denied Feb. 27, 1964.

E. H. Patton, Jr., Houston, Bryan & Patton; Houston, of counsel, for appellant.

Damiani & Black, Raymond L. McDermott, Mabel Grey Howell, Houston, for appellee.

COLEMAN, Justice.

This is an appeal from a judgment entered in response to a jury verdict awarding appellee the benefits prescribed by the Workmen's Compensation Act for total and permanent disability.

Before the trial began appellant presented to the trial court a motion in limine requesting the trial court to exclude from the jury the fact that total and permanent disability was compensable by 401 weeks of compensation and that appellee's compensation rate was $35.00 per week. This motion was denied and the court permitted that part of appellee's petition praying for a judgment for total, permanent incapacity in the amount of $35.00 per week for 401 weeks to be read to the jury.

Thereafter, during jury argument, appellee's counsel argued:

"Now we have the evidence from the man's own boss, who says that he couldn't employ John T. Nunn in his condition as a full-time employee. He has been working strictly as an independent, picking up some help to enable him to do it. I admire him for it. I know that the jury does. They are not going to hold it against John because he got out and sold a few vacuum cleaners, and say that he is not entitled to a miserable $35.00 a week for 401 weeks maximum.

"MR. PATTON: Your Honor, I object to that. It is outside the province of the jury.

"THE COURT: Overruled.

"MR. McDERMOTT: $35.00 a week for 401 weeks, that is the magnificent sum the law allows for this kind of case.

"MR. PATTON: Same objection. There is nothing in evidence about it.

"MR. McDERMOTT: The pleadings show that. The pleadings show what has been sued for, the most the law allows.

"Ladies and gentlemen of the jury, I am sure most of you know that anyhow. That is all he can get. That is the maximum.

"MR. PATTON: Your Honor, the same objection.

"THE COURT: Overrule the objection.

"MR. McDERMOTT: $35.00 a week for 401 weeks. And that can be discounted at four per cent per annum for lump sum payment.

"MR. PATTON: Same objection.

"THE COURT: Sustain the objection.

"MR. McDERMOTT: I realize the insurance company doesn't want you to consider the small, meager sum he will receive under the law, but, ladies and gentlemen of the jury, you are entitled to know what this man sued

for and what the law allows, and that is all I am telling you. I think most of you know it anyway. That is all he has sued for, for that is what the law provides.

"MR. PATTON: May I have a running objection to this line of argument?

"THE COURT: Yes.

"MR. McDERMOTT: Don't whittle that sum down folks, please. Don't go out there and find it to be a case of partial disability, when it is not under the law and facts of this case. It is not. It is a case of total, permanent disability, or it is nothing.

\* \* \* \* \* \*

"And if we do fail to convince one or two members on the jury, the rest of you stay there just as long as necessary to see that a verdict is written in this case of total, permanent disability.

"It is a meager, small sum for the suffering and disability this man has endured. All you have to do is to look at him, to look at the side of his worn shoes, and know that he has spoken the truth to you from beginning to end in this lawsuit.

\* \* \* \* \* \*

" \* \* \* you can say to John, we have written a fair verdict under the evidence in this case; we know you are trying, and this little bit may help you."

Appellant's point of error is that "the Court erred in allowing plaintiff to advise the jury by the reading of pleadings and by argument that the maximum recovery plaintiff could obtain was $35.00 per week for 401 weeks."

There is considerable question as to whether the Texas cases support the proposition that the reading to a jury of a pleading such as that with which we are concerned constitutes error. Federal Un-derwriters Exchange v. Bickham, Tex.Civ. App., 136 S.W.2d 880, aff'd 138 Tex. 128, 157 S.W.2d 356; Texas Employers' Insurance Ass'n. v. Rigsby, Tex.Civ.App., 273 S.W.2d 681; Texas Employers' Insurance Ass'n v. Logsdon, Tex.Civ.App., 278 S.W. 2d 893, writ ref., n. r. e.; Traders and General Insurance Co. v. Smith, Tex.Civ. App., 311 S.W.2d 91, writ ref., n. r. e.; Texas Employers' Insurance Ass'n v. Ru-bush, Tex.Civ.App., 337 S.W.2d 501.

This Court has held that it is not error for the trial judge, on motion, to instruct the counsel for a claimant not to inform the jury, either in reading from pleadings, or by argument, the law with reference to wage rate or the number of weeks' compensation provided by law for a particular injury. Sisk v. Glens Falls Indemnity Company, Tex.Civ.App., 310 S.W.2d 118, 66 A.L.R.2d 1.

No decision of the Supreme Court of Texas deciding this question has come to our attention. In Texas Employers' Insurance Ass'n v. Poe, 152 Tex. 18, 253 S.W.2d 645, the Court stated: "It is the better practice not to read to the jury those portions of the pleadings with which the jury is not concerned." This admonition was repeated in Texas Employers' Insurance Ass'n v. Rubush, supra. All of these cases held that the error, if any, in permitting the pleadings to be read to the jury was not a reversible error in that such an error was not one calculated to cause, and which on the record of the particular case, probably did cause, the rendition of an improper judgment.

█ The objections urged to the argument placing before the jury the fact that $35.00 per week for 401 weeks is the maximum compensation allowed under the statute were that the argument was not based on evidence and concerned matters outside the province of the jury. The objections were proper and should have been sustained. Ex Parte Fisher, 146 Tex. 328, 206 S.W.2d 1000. In determining whether harm probably resulted, it is proper to con-

sider the fact that the jury had been informed by the pleadings the maximum amount of compensation one totally and permanently disabled could recover. Texas Employers' Insurance Ass'n v. Poe, supra. It would be illogical to hold that information gained from a pleading which the court improperly, if not erroneously, permitted the jury to hear would render harmless the court's error in permitting improper argument. The fact that the jury heard the pleadings read should not affect our determination of whether or not the error in permitting the objectionable argument probably resulted in the rendition of an improper judgment. This error would not be minimized nor magnified by the fact that the jury learned the same thing from hearing the pleadings.

█ Counsel for appellee argued that the jury should not find that appellee suffered a partial disability, when the evidence showed a total, permanent disability, merely because appellee would be entitled to $35.00 per week for 401 weeks, for total, permanent disability. He was arguing that this was a small sum; that his client was not trying to get rich at the expense of the insurance company. It cannot be doubted that some information as to the effect of their answers to the issues was thus imparted to the jury. In his written charge the court instructed the jury not to "discuss nor consider what effect any of your answers may have upon the rights of the parties, nor the judgment that may be rendered by this Court in this cause * * *." The size of the judgment to be entered by the court, whether large or small, was not a matter which should have been considered by the jury in determining whether appellee's disability was total or merely partial. No issue on wage rate was submitted. The evidence of permanent disability was strong, though not conclusive. Under the evidence the more closely contested issue was whether the disability was total or only partial. The jury's answer finding appellee's disability total is strongly supported by credible evidence. Had the jury found partial disability, such a finding would also have found ample support in credible evidence. Considering all of the evidence, we conclude that the answer made by the jury is supported by a preponderance of the evidence.

There is nothing in the record to demonstrate that the jury was improperly influenced, in arriving at their answers to the issues submitted, by the argument of which complaint is made. A consideration of the record as a whole does not convince us that the argument probably caused the rendition of an improper judgment.

Appellant complains that the court erred in allowing appellee's counsel to advise and argue to the jury that plaintiff had not been paid any weekly compensation, where lump sum benefits were stipulated, and had not paid plaintiff's medical and hospital expenses, where it was stipulated that the full amount of such expenses would be paid by appellant if the jury found that plaintiff had sustained a compensable injury.

██ By motion in limine the court was requested to instruct counsel not to introduce evidence showing the nonpayment of weekly compensation or of medical and hospital expenses. This motion was denied by the trial court. Questions concerning these matters were asked, and answered, without further objection. The trial court was not required to determine in advance of trial the admissibility of such evidence. In any event the evidence was properly admitted as tending to show necessitous circumstances requiring appellee to work when he was not physically able to do so. Muro v. Houston Fire and Casualty Insurance Company, Tex.Civ.App., 329 S.W.2d 326, writ ref., n. r. e., on former appeal, 310 S.W.2d 420. This evidence was referred to by appellee's counsel in his argument to the jury and appellant failed to secure a ruling on his objection, if in fact the objection was directed to the matter of which complaint is now made. Under these circumstances appellant has no grounds for complaint. Hartford Accident and Indem-

nity Co. v. McCardell, Tex.Sup., 369 S.W. 2d 331; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054.

Appellant's fourth Point of Error reads:

"The Court erred in allowing plaintiff to imply and infer to the jury by questions, argument, and side-bar remarks that Dr. Thomas Hudgins had acted improperly, unethically, or illegally in discussing his treatment of plaintiff with defendant's counsel at a time when Dr. Hudgins was under subpoena duces tecum to produce his records, was in attendance of court, and was waiting to be called as a witness."

During the course of cross-examination of Dr. Hudgins by appellee's attorney, the following occurred:

"Q Doctor, though you were subpoenaed by the insurance company to appear in this case, did I not see you in the next court room back there during the recess going over your file with Mr. Patton?

"A He asked me if he could talk with me, and we went in there about a minute.

"Q Were you not going over the file with him, holding your report and discussing those reports?

"A Since I had been subpoenaed, I felt that I had a right to do so.

"Q Did you have any permission from the patient to reveal the contents of a privileged file to this lawyer?

"A I didn't think under subpoena I had to.

"Q You feel that you can, under your oath as a doctor, reveal a privileged file you have on a private patient to somebody else without the patient's consent?

"A I don't usually, but I have been used to doing it if I was ordered to produce it in court under subpoena.

"Q Did this court ever order you to produce it?

"MR. PATTON: Your Honor, he is trying to argue a matter of law.

"MR. McDERMOTT: I object to the statement of the law. He has no right to produce it until the Court orders it done.

"MR. PATTON: That is not correct.

"Q Did the Court ever order you to show the file.

"MR. PATTON: I object because it is immaterial.

"MR. McDERMOTT: It shows the interest and bias of this witness.

"THE COURT: Overrule the objection.

"Q Did you ever get an order from this Court to show this file on this private patient to this insurance company?

"A No, sir. If I was in error, I apologize abjectly.

"Q At no time did you ever obtain permission from this private patient to demonstrate the file to the insurance company lawyer?

"A No. I made a mistake apparently.

"MR. McDERMOTT: That is all."

REDIRECT EXAMINATION By Mr. Patton

"Q Doctor, if I led you into error, I am sorry. Did you reveal anything to me that did not come out here on the witness stand?

"A Nothing."

It is noted that there was only one objection made by appellant on which he secured a ruling of the court, and the grounds for that objection was immateriality of the question.

After the testimony was closed, appellant filed a written motion asking the court to prohibit argument to the jury touching on the alleged improper conduct of Dr. Hudgins and asking that the jury be instructed that Dr. Hudgins had not acted improperly. This motion was overruled. Appellee's counsel, in his argument to the jury, stated that the doctor, contrary to the ethics of his profession, revealed to appellant's lawyer the contents of appellee's private file, and that he had no right "to reveal the private confidential file of a patient to the Insurance Company lawyer before he ever gets on this witness stand, without the benefit of a court order, without any direction from this Court, but purely on his own." An objection was made to the argument on the grounds that the argument was not on matters of evidence, but was an incorrect statement of law. While the first time the argument was made, the objection was overruled, when it was repeated and the objection was again urged, it was sustained. The requested instruction was not renewed.

While the question "Did the Court ever order you to show the file?" may have been objectionable, it was not immaterial. As a matter of law the doctor was not required to answer the questions of appellant's lawyer in the absence of a court order, which is all it appears that he did, nor is he prohibited from doing so. While under the circumstances as explained to the jury by the doctor, he was not to be censured for his cooperative attitude to appellant's attorney, the attack by appellee's attorney is understandable when it is borne in mind that appellant's attorney might well have hesitated to call the doctor as his witness had he not been advised of the general tenor of his testimony. It is unlikely that the matter influenced the jury to give less credence to the doctor's testimony. Since the objection to the argument was sustained, no error was shown in reference thereto in the absence of a request to disregard. The Point does not present reversible error.

Appellant's final Point relates to the cumulative effect of the various errors presented by the other points of error. No such assignment of error appears in the motion for new trial.

The judgment of the trial court is affirmed.